## 20119

George W. DAVENPORT, Appellant, v. Jean Hogg DAVENPORT, Respondent.

(220 S. E. (2d) 228)

*J. D. Todd, Jr., Esq.,* of *Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,* cites:

*Harry A. Chapman, Jr., Esq.,* of *Horton, Drawdy, March-banks, Ashmore, Chapman & Brown,* of Greenville, *for Respondent,* cites:

December 1, 1975.

RHODES, Justice:

This appeal involves a dispute between the father and the mother over custody of two children, three and five years of age.[1] The Circuit Court reversed the finding of the master[2] and awarded custody to the mother from which order the father has appealed. We affirm.

This action was instituted by the plaintiff-appellant, George W. Davenport, for the purpose of obtaining a divorce on the ground of adultery from the defendant-respondent,

---

[1] The ages of the children, both of them boys, at the time this action was commenced on June 12, 1974.

[2] The master recommended that custody of the children be granted to the father subject to the mother's right to retain custody of the youngest child until he reached the age of five and one half years.

Jean Hogg Davenport, and gaining custody of their children. Both the Circuit Court and master concluded that the husband was entitled to a divorce on the ground of adultery from which finding there has been no appeal. Thus, the sole issue for determination is whether custody should have been granted to the mother, and our review of the record will be confined to evidence relevant to such issue.

There being no concurrent findings by the master and Circuit Court in this equity case, it becomes the duty of this Court to independently determine the issues of fact according to our view of the weight of the evidence. *Adams v. Adams,* 262 S. C. 85, 202 S. E. (2d) 639 (1974).

The parties were married in 1967, and lived together as husband and wife until January 18, 1974. Upon their separation, they entered into a written agreement, initiated by the husband, which provided that the mother was to have custody of their children with liberal visitation privileges granted the father. The cleavage in the marriage began to appear shortly after the birth of the youngest child at which time the parties were residing in the husband's family home in Greer. The husband was busily engaged in managing a relatively large family automobile dealership of which he was a principal stockholder. The wife felt that she was being neglected by the husband and the marriage progressively deteriorated, aggravated by sexual incompatibility and mutual suspicion and distrust. When asked by the wife if he had been unfaithful to her, he replied that he could not say that he had or had not. The husband testified that at the time he made this response he had not been unfaithful to his wife, and merely made the statement to make his wife jealous. The wife testified that she felt she had lost her husband and that he no longer wanted her. After this incident, the wife had an illicit affair with another man in August 1973, of which the husband later became aware. Upon the separation of the parties on January 18, 1974, the above-referenced

agreement was entered into and the wife moved from Greer to Spartanburg with the children. With substantial financial assistance from the husband, she purchased a condominium in which she and the children have since resided, she being employed as a school teacher. At the time of the master's hearing the wife was 29 years of age and the husband 31.

In May of 1974 the husband employed private detectives to systematically observe the condominium in which the wife and children resided, and evidence was obtained that an adult male had spent the entirety of five (5) nights at the dwelling. The wife did not dispute the evidence nor does she deny an adulterous relationship with this man.

In determining the issue of child custody the paramount consideration is the welfare of the child. In cases, as here, where the parties have previously agreed as to whom should have custody, the party seeking to set aside the agreement has the burden of proving that the welfare of the children requires the agreement to be abrogated. *Ford v. Ford,* 242 S. C. 344, 130 S. E. (2d) 916 (1963). While numerous prior decisions set forth criteria that are helpful in such a determination, there exist no hard and fast rules and the totality of circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed. The morality of a parent is a proper factor for consideration but is limited in its force to what relevancy it has, either directly or indirectly, to the welfare of the child. Custody of a child is not granted a party as a reward or withheld as a punishment.

In studying the record before us, the conclusion is inescapable that the children's relationship with their mother is exemplary. They are healthy and well-adjusted. The mother has lived with and cared for them since birth.[3] The condominium in which they live has three bedrooms and is located in an excellent environment for the rearing of chil-

---

[3] Except for a period of a few weeks during this litigation when the father had custody of the older child under a court order.

dren. The mother's education includes a degree in elementary education and 18 hours of graduate study in early childhood development. Her employment as a 6th grade teacher in the public schools normally allows her to return home by 3:30 p.m., and during her absence the children are either in school or cared for by competent domestic help. At the final hearing before the master, the mother testified that her husband had told her the night before that he knew that she did take good care of the children. The husband did not contradict this testimony. It is significant that the master found it proper for the mother to retain the custody of the younger child until he attained the age of five and one half years.

The father continues to reside in the large family home in Greer, which was the marital abode of the parties. The house is located in the older section of the city where few, if any, small children live. He is a hard-working businessman with many responsibilities. If custody of the children were awarded him, he proposes to hire a housekeeper and other necessary domestic help to care for the children during his absences. He enjoys an excellent reputation in the community.

We are convinced that the admitted moral lapses of the mother are not indicative of a continued course of conduct. Her misconduct in the condominium while the children were living with her is irresponsible and indefensible. She has confessed these transgressions, and her attitude is repentant and remorseful.

We agree with the lower court that the father has failed to prove by the greater weight of the evidence that the welfare of the children required the abrogation of the Separation Agreement.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.