1266

Tammie DUCK, Appellant v. Vivian W. JENKINS, Respondent. In re: Ronnie Corté DUCK, A minor under the age of fourteen (14) years.

(375 S. E. (2d) 178)

Court of Appeals

*Thomas L. Bruce, Susan I. Johnson,* and *Linda M. Leslie,* both of *Legal Services Agency of Western Carolina, Inc.,* Greenville, *for appellant.*

*Harry C. Walker,* Greenville, and *H. Clayton Walker, Jr.,* Columbia, *for respondent.*

*Bobby H. Mann, Jr.,* Greenville, *Guardian ad Litem.*

Heard Nov. 14, 1988.

Decided Dec. 5, 1988.

CURETON, Judge:

The primary issue in this appeal is whether the family court abused its discretion in denying Appellant Tammie Duck's petition for visitation with her child. We affirm.

Tammie Duck, age 23, gave birth to Ronnie Duck in 1982. Ronnie's grandmother cared for him until early 1984 when she fell ill and Duck consented to an order transferring custody to Vivian W. Jenkins, a family acquaintance.

The custody order did not provide for visitation. For a period of time, Jenkins permitted both the mother and grandmother to visit Ronnie. A little more than a year before the hearing in this matter, Jenkins refused further visitation. The mother then petitioned for visitation. The family court found visitation would not be in the best interest of Ronnie and denied the mother's petition.

The primary basis for the family court's ruling is that continued contact between the mother and Ronnie is "detrimental to the best interest of said minor child and would expose said minor child not only to emotional trauma, but

the possibility of physical harm." The mother argues on appeal the evidence does not sustain a finding that the granting of visitation would expose Ronnie to physical harm. She also argues the trial judge (1) failed to properly consider the propriety of awarding her supervised visitation, (2) denied her visitation on the improper consideration that to do so would result in the custodian abandoning the child, (3) erred in finding she willfully failed to visit Ronnie for a period of more than six months prior to the initiation of a prior adoption proceeding by Jenkins, and (4) erroneously admitted into evidence her criminal record.

We first address the question of whether the 1984 order granting custody to Jenkins is a court determination of the issue of visitation. The order states the mother consented to the custody arrangement but says nothing about visitation. The general rule is that unless the custody order expressly prohibits visitation privileges to the noncustodial parent such privileges ensue from the fact of parenthood. 24 Am. Jur. (2d) *Divorce and Separation* Section 999 (1983); 27C C. J. S. *Divorce* Section 632 (1986). The decision to terminate visitation between a parent and a child is a drastic one. *Venable v. Venable,* 273 S. C. 96, 254 S. E. (2d) 309 (1979). While a court has the authority to deny a parent all rights to visitation in exceptional circumstances that power should be used sparingly. *Id.* at 97, 254 S. E. (2d) at 310; *Porter v. Porter,* 246 S. C. 332, 143 S. E. (2d) 619 (1965). The estrangement of a parent from her child should be avoided whenever possible. 24 Am. Jur. (2d) *Divorce and Separation* Section 999 (1983). We hold the custody order did not decide visitation.

We next consider the mother's argument that the trial court's finding that visitation with the child may subject him to physical harm is error. The record shows the mother "ran in the streets," was beaten in her own home, and was cut on the arm in a public street. All of these things occurred within a few months of the hearing. We agree that while this evidence may support a finding that unsupervised visitation could expose the child to physical harm, it does not support the conclusion that properly supervised visitation would expose the child to such harm. We note, however, the trial court also found continued con-

tact between the mother and Ronnie would expose him to emotional trauma. No exception is taken to this finding, nor does the mother argue error regarding this finding in her brief. An unchallenged finding of fact will not be disturbed by this court on appeal. *Evans v. Bruce*, 245 S. C. 42, 138 S. E. (2d) 643 (1964) (absence of an exception precludes review).

Visitation privileges with her child may be denied a parent where their exercise would injure the child emotionally. 27C C. J. S. *Divorce* Section 632 (1986). Jenkins testified further contact between Ronnie and his mother would result in emotional harm to the child. Recognizing the fact the trial court was the judge of Jenkins' credibility, this evidence is sufficient to support the court's finding of the likelihood of emotional harm, especially in view of its assessment that the mother's testimony was not credible.

Concerning the mother's assertion the trial court failed to consider the propriety of supervised visitation, this contention also is without merit. There was much discussion during trial of the advisability of supervised visitation. At the end of the hearing, the trial judge in explaining his decision to deny all forms of visitation to the mother stated:

> "To me to now [sic] as to Tammie laid dormant on her visitation rights if any or however she did to the child for a period of one to two years, and now come in and try to set up a complicated visitation, supervision schedule for her benefit would be cumbersome, and would be unworkable, and I fail to see where it's in the best interest of the child."

The court's written order concluded any further contact between the mother and Ronnie would be detrimental to Ronnie and not in his best interest. We are convinced the trial court properly considered the question of supervised visitation.

We also must reject the mother's argument the trial judge denied her visitation based on the improper consideration that to do so may incite the custodian to abandon the child. We see nothing in the record to indi-

cate the court was influenced by this consideration. In fact the record suggests otherwise. While Jenkins stated in her testimony she may consider relinquishing custody of Ronnie if the mother were permitted to have visitation with him, the trial judge's discussion with the Guardian ad Litem indicates he did not accept this testimony and did not believe the custodian would in fact carry out the suggestion.

We next consider the mother's argument the trial judge improperly found the mother "willfully failed to visit the child or abused visitation privileges." She also argues that in this regard the judge's denial of visitation was predicated on his concern that such an award would have an adverse effect on a subsequent termination proceeding. The trial court found in its order that the mother "did not exercise or attempt to exercise any visitation with [Ronnie] for six (6) months or more prior to [Jenkins'] commencement of an action seeking adoption of [Ronnie] on March 31, 1986." The order makes no reference to the mother willfully refusing to visit. While the trial court's questions to the Guardian ad Litem astutely point out that, assuming the mother has already legally abandoned Ronnie, a grant of visitation could nullify a subsequent termination of parental rights suit the court also observed that a cause of action for termination cannot accrue based on abandonment if the mother is precluded by court order from visiting Ronnie.

The mother recognizes in her brief that abandonment based on failure to visit requires proof by clear and convincing evidence. *Santosky v. Kramer*, 455 U. S. 745, 102 S. Ct. 1388, 71 L. Ed. (2d) 599 (1982); *South Carolina Department of Social Services v. Harper*, 284 S. C. 212, 325 S. E. (2d) 71 (Ct. App. 1985). Because of a different standard of proof, we cannot see how the mother is prejudiced by the finding complained of even if unsupported by the evidence. Moreover, the evidence is sufficient to support the conclusion the mother did not exercise her visitation rights for more than six months prior to the institution of the adoption action. Contrary to the mother's contention, the trial court did not hold she abused her visitation privileges. Based upon the record before us, we see no indication that the trial court's denial of visitation to the mother is based upon an improper consideration of the effect a visitation order would

have on a subsequent termination proceeding.

Finally, the mother argues error in the admission of ■ her criminal record. On cross-examination, the mother acknowledged the existence of a police record. Later, the record was admitted into evidence showing that between 1980-1984 the mother was arrested for disorderly conduct, resisting arrest, possession of an unlawful weapon, prostitution, possession of marijuana, assault and battery and solicitation for immoral purposes. The mother objected to the admission of the record on the ground of remoteness. The admission of evidence is largely within the discretion of the trial court. *Associate Management, Inc. v. E. D. Sauls Const. Co.*, 279 S. C. 219, 305 S. E. (2d) 236 (1983). Whether an occurrence is so remote as to be immaterial and irrevelant is also a matter within the sound discretion of the trial court. *See Rutledge v. St. Paul Fire and Marine Insurance Co.*, 286 S. C. 360, 334 S. E. (2d) 131 (Ct. App. 1985). We are not persuaded the trial judge abused his discretion in allowing the record into evidence.

We affirm the order of the trial court. In so doing we express our earnest aspiration that our courts interrupt parental ties only in extraordinary circumstances. Here we note Ronnie has had little contact with his mother since birth and none in over two years. The relationship between Ronnie and his mother is one of estrangement. We, like the family court, are reluctant to require Ronnie to engage in any form of visitation with his mother without assurances that he would not be psychologically and emotionally traumatized by the experience. To this end, we make it clear this ruling does not preclude the mother from again petitioning the family court for visitation privileges if she can demonstrate to the satisfaction of the family court that visitation would not adversely affect the psychological and emotional welfare of Ronnie.

Affirmed.

SHAW and BELL, JJ., concur.