492 S.E.2d 415
**Christine Virginia ROUTH, Appellant,**
v.
**Charles Wayland ROUTH, Respondent.**
No. 2728.
Court of Appeals of South Carolina.
Heard Sept. 9, 1997.
Decided Sept. 29, 1997.

Lourie A. Salley, Lexington, for appellant.

Milton M. Avrett, Ill, Augusta, GA, for respondent.

Guardian ad Litem: Vickie Johnson Snelgrove, of Johnson, Johnson, Whittle, Snelgrove & Weeks, Aiken.

CURETON, Judge.

The parties to this action were formerly husband and wife who were divorced in the state of Georgia on December 16, 1992. Pursuant to the parties' agreement, they were granted joint custody of their daughter, Amber Nicole Routh, age two, with the wife being "designated as the primary physical custodian of Amber." The father was given the usual visitation rights. The instant custody case began with the appellant, Christine Virginia Routh (Christie), filing a complaint against the respondent Charles Wayland Routh (Freddie), in which she requested Freddie be enjoined from exercising his visitation rights with Amber because Freddie had sexually abused Amber. Freddie counterclaimed for custody of Amber and the court granted custody to Freddie. We affirm.

### *Issue On Appeal*

While the wife has divided her position on appeal into four arguments, the one encompassing issue is whether the trial court abused its discretion in granting custody to Freddie.

### *Facts*

After the separation of the parties in August 1992, Christie and Amber moved into Christie's mother's (Mrs. Cooper's) home in Aiken, South Carolina, while Freddie remained in Georgia. Christie and Amber have been living in Mrs. Cooper's home since the divorce, except for a short period from April to August 1993, when they resided with Freddie's sister. In October 1993, Freddie remarried. Two weeks later he exercised his weekend visitation with Amber. Freddie picked up Amber from Mrs. Cooper's house on November 12, 1993, and returned her on November 14, 1993. During that weekend visitation, Freddie, his new wife, stepchild and Amber all went to Six Flags over Georgia.

Mrs. Cooper testified that upon her return, Amber became agitated and refused to sit in the bath tub, and complained her vagina burned. Mrs. Cooper also testified Amber was restless, attempted to french kiss her, simulated intercourse, and asked her to put her tongue on her bottom. During this visitation, Christie was out of town with her boyfriend.

On November 15, 1993, Mrs. Cooper called Amber's pediatrician to examine Amber. She was told to take Amber to the University Hospital in Augusta, Georgia. The University Hospital found no evidence of sexual molestation. The alleged incident of sexual abuse was reported to the Aiken County Department of Social Services (DSS), which commenced an investigation. While a great deal of the order under appeal is devoted to the abuse issue, suffice it to say, the court found Freddie did not abuse his child. There has been no appeal of that finding. Thus, the principal issue on appeal is whether or not Freddie has shown sufficient change of conditions to warrant a modification of the Georgia custody order.[1]

Freddie works full-time for a heating and air conditioning company and part-time for his father who runs a cleaning business. Between the two jobs, Freddie grosses $1,306 per month. Freddie's new wife, Tina, cares for two children in their home and earns about $600 monthly. Freddie, Tina and their two children [2] live in a manufactured home in Georgia which has three bedrooms and two baths. One of the bedrooms is set aside for Amber. Freddie and Tina testified they spend a lot of time with their family which is the focus of their lives. Amber is loved by Freddie and Tina and there is every evidence she loves them.

Christie has, until recently, had difficulty holding down a job. Since the divorce, Christie has worked several places, but has now become a certified nail technician, and has been employed since May 1995 in a beauty parlor. Christie earns $535 per month, but testified she expects her income to increase to $300 per week in the near future. Christie has been subsidized by her family since the divorce. Except for

---

1. Neither party questions the jurisdiction of the family court to modify the Georgia custody order.

2. The wife had a child before marrying Freddie and the two of them have a child together.

her days off, most of the care afforded Amber comes from Mrs. Cooper. Christie's involvement with Amber on a typical day is somewhat limited. Christie takes Amber to day care between 8:15 and 8:30 a.m. She is taken to kindergarten at 10:30 a.m. by day care employees, who pick her up at 2:00 p.m. for return to day care. Mrs. Cooper picks Amber up from day care at 2:30 p.m. and cares for her until Christie returns home at approximately 7:15 p.m. By the time Christie gets home at night, Amber has usually been bathed and fed by Mrs. Cooper.

The trial court found that during the times Christie has lived with her parents, Mrs. Cooper has interfered with Freddie's visitation. Contrarily, during the period from April to August 1993 when Christie resided with Freddie's sister, Freddie experienced little difficulty in exercising his visitation rights with Amber.

Ruth Doolittle, the DSS case worker who investigated the abuse allegation, observed Christie's dependence on Mrs. Cooper. Doolittle testified Mrs. Cooper said she had concerns about Christie's ability to care for Amber and further stated "that she had done a lot of caring for the child" herself.

The Guardian Ad Litem (GAL) investigated both parents' homes and recommended custody be granted to Freddie. The GAL found that Christie put her own comforts ahead of Amber's and was immature, dependent on her family, and controlled by Mrs. Cooper. Thus, the GAL generally was of the opinion that should custody remain with Christie, Mrs. Cooper would drive a wedge between Amber and Freddie. The GAL felt very strongly that the charges against Freddie were fabricated by Mrs. Cooper as a way of gaining sole control over Amber.

A psychologist, Dr. James I. Maish was appointed by the court to evaluate the allegations of sexual abuse and the relative situations of the parties. Dr. Maish found Christie to be an immature and impulsive woman who at times did not appear to act in the best interest of Amber. He found Christie to be quite dependent upon her family and believed Mrs. Cooper exerted too much control over Christie. Dr. Maish reported that Mrs. Cooper told him that Christie was not capable of caring for Amber and it would be better for her

to have custody. According to Dr. Maish, Mrs. Cooper stated Amber viewed Christie more like a sister than her mother. He agreed with the GAL that the child abuse complaint was Mrs. Cooper's means of controlling Amber, and if Amber remained in Mrs. Cooper's household, she would attempt to weaken Amber's relationship with her father. Dr. Maish believed Christie was beginning to have some insight into her problems and recommended that she seek psychological treatment for a dependent personality disorder. Dr. Maish recommended that custody of Amber be granted to Freddie.

On the other hand, Christie and her mother testified she has begun taking a more active role in rearing Amber. Christie listed a number of things she does for Amber, including feeding and getting her dressed for school, taking her to school, attending school activities, dressing Amber for bed and putting her to bed at night. Christie does not work on Sundays and Mondays, and testified she shoulders all responsibility for Amber on those days. While Christie does not share any of the household expenses in her parent's home, she takes care of Amber's school expenses and other incidentals. Christie acknowledges it is best that she and Amber not reside in Mrs. Cooper's household and she plans to get her own residence when her salary permits. Both Christie and Mrs. Cooper testified Mrs. Cooper is too sick to care for Amber. Christie testified at trial that she did not think there was a problem with the relationship between herself, her mother and Amber.

### Discussion

### I.

In her first argument, Christie states the trial court did not give any consideration to her substantial contributions to Amber's education. Christie testified Amber was "doing fine" in kindergarten, and that she had received awards for not being a disciplinary problem. Further, Christie testified she was active in Amber's school activities and received thank you notes for furnishing a pumpkin to the school for Halloween and candy for the treats jar. Additionally, Amber had received student of the week award twice and her most recent progress report showed the majority of areas were marked

satisfactory. Mrs. Farris, the operator of the day care facility where Amber attends, testified Amber is a well-mannered, happy child. Christie concludes this argument by saying that in "all of Amber's educational matters, [she] has proved responsible, involved and committed, yet this issue was not addressed by the court." We disagree.

While the court could have more fully set out the contributions of Christie to Amber's kindergarten successes, clearly the court did not totally over look those contributions, as suggested by Christie. Moreover, Amber is in her first year of kindergarten, and while she appears to be doing well, the progress reports cover only the first forty-five (45) days of school. Unfortunately, Christie did not appear to have recognized the importance of sharing Amber's school progress with Freddie as required by the divorce decree. We find no merit to Christie's argument that the trial court did not consider her contributions to Amber's educational achievements.

## II.

Christie next argues that Freddie has not shown a change of circumstances substantially affecting the best interests and welfare of Amber. There are a multitude of cases in South Carolina requiring a change of circumstances substantially affecting the best interests and welfare of a child before a court will upset a custody order. *Moss v. Moss*, 274 S.C. 120, 262 S.E.2d 11 (1980). Generally, the change of conditions warranting a change of custody must occur after the date of the custody order, and before the date of the petition requesting the change. *Cook v. Cobb*, 271 S.C. 136, 245 S.E.2d 612 (1978).

In the case of *Wheeler v. Gill*, 307 S.C. 94, 99, 413 S.E.2d 860 (Ct.App.1992), we emphasized that the controlling consideration in that case, where both parties asked the court to terminate the joint custody arrangement and award sole custody to one party, was the welfare and best interest of the child.[3] We therefore conclude that the considerations that go

---

**3.** *Gill* differs from the instant case in view of the fact that the divorce decree provided a review of the operation of the joint custody arrangement after one year. Thus, neither party was required to show a change of conditions.

into determining whether to modify a sole custody award are relevant considerations for the court in determining whether to change primary physical custody or "primary placement" to sole custody.

In its order, the trial court cites the following circumstances as supporting a change of custody: (1) Christie's placement of her individual happiness above that of Amber; (2) her sexual conduct in her home and in the presence of Amber; (3) her lack of job stability; (4) her dependence on her family; (5) her mother's unhealthy influence; (6) her immaturity and inability to grasp the responsibility of being a parent, and (7) Christie's denial that her mother's influence has any negative effects on Amber.

In her brief, the GAL sets out the following additional factors as circumstances that she feels support the custody award to Freddie: (1) the false allegation of child abuse; (2) the interference by Mrs. Cooper with Freddie's visitation; (3) Christie's failure to keep Freddie informed of Amber's extra-curricular activities; and (4) the psychologist's opinion that Christie suffers from a personality disorder.

■ Christie argues that the court's finding of immaturity, her mother's influence and the lack of job stability all predated the divorce and, thus, do not constitute changed circumstances. We agree that the evidence shows Christie suffered from these shortcomings before the divorce. However, the impact of her immaturity has manifested itself in different ways since the divorce. In any event, we think the record amply supports a change of circumstances. Certainly the false allegations of child abuse, although the outgrowth of Mrs. Cooper's efforts to further control Amber, were supported by Christie and are legitimate post-divorce considerations. Further, it is apparent that Mrs. Cooper's continued influence over Christie is manifest in the filing of the instant action to terminate Freddie's visitation. Additionally, the diagnosis of Christie's personality disorder occurred after the divorce. Finally, while the trial court did not mention it, the fact that Freddie is happily remarried to a wife who loves Amber, is mature emotionally, has held stable employment over the years and is in a position to offer Amber a better home environment are compelling circumstances which along

with those just mentioned, constitute a change of circumstances substantially affecting the welfare and best interest of Amber. *See Fisher v. Miller*, 288 S.C. 576, 344 S.E.2d 149 (1986) (remarriage is a circumstance which when considered with other changes of circumstances, may warrant a change of custody). As noted in *Barrett v. Barrett*, 261 S.C. 111, 198 S.E.2d 532 (1973), remarriage is normally relevant to show improved circumstances on the part of a remarried parent seeking to obtain custody, not to show the deterioration of the circumstances of the custodial parent.

### III.

■ Christie next argues that regardless of the claims she improperly conducted herself with the opposite sex, she was dependent on her family, and was unduly influenced by her mother, there is no indication such matters have adversely affected Amber. We disagree. The requirement that the moving party show a change of circumstances affecting the interests and welfare of the child, does not require a finding of an existing physical or emotional injury to the child. *Ewing v. Baumrind*, 283 S.C. 461, 322 S.E.2d 696 (Ct.App.1984) (no requirement that parent seeking custody must show in addition to a betterment of his circumstances that the custodial parent engaged in conduct that adversely affected the welfare of the child). An existing unhealthy environment that is likely to impact on the child in the future, affects the welfare of the child. There is evidence in the record that if Amber remains in the home of Mrs. Cooper, she will attempt to weaken the relationship between Amber and Freddie. Importantly, the record reflects that Christie has failed to accept the fact that her mother's relationship with Amber and herself could possibly have an adverse effect on Amber.

### IV.

■ Finally, Christie argues the court erred in considering facts not in evidence to conclude her conduct with members of the opposite sex adversely affected Amber. Moreover, she argues Freddie engaged in conduct similar to the conduct of which she is accused. A parent's morality, while a proper consideration, is "limited in its force to what relevancy it has,

either directly or indirectly, to the welfare of the child." *Davenport v. Davenport,* 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975). The testimony reflects that on two or three occasions when Freddie or his mother arrived at Christie's apartment to pick Amber up for visitation, they observed persons sleeping on the couch, and on at least one occasion a man was observed dressed only in boxer shorts. Still on another occasion, Christie met Freddie at the door of the apartment clad only in pink underwear and a cut-off T-shirt. During the time Christie resided in the apartment, she was visited by a number of men. On the other hand, Freddie admitted that living with Tina and her child for eight months before they were married was not the right thing to do. He testified, however, that the children had separate bedrooms, and they were never exposed to conduct of a sexual nature. A non-custodial parent's immoral conduct will not preclude a change of custody to that parent if the custodial parent's conduct is more immoral than the noncustodial parent's conduct. *Branham v. Branham,* 266 S.C. 581, 225 S.E.2d 343 (1976). The premarital home environment of Freddie and his present wife, although not commendable was quite different from that of Christie. Although the evidence of Christie's sexual misconduct is not strong, we find no error in the trial court utilizing such conduct as a factor in determining that the best interests of Amber would be served by placing custody with Freddie.

### Conclusion

There exist no hard and fast rules for determining when to change custody and the totality of the circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed. *Davenport,* 265 S.C. 524, 220 S.E.2d 228. We conclude the totality of the circumstances support the trial court's award of custody to Freddie.

Accordingly, the order of the trial court is affirmed.

**AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.