500 S.E.2d 790

**Tina CLEAR, Respondent,**

v.

**Stephen CLEAR, Appellant.**

**No. 2830.**

Court of Appeals of South Carolina.

Heard March 4, 1998.

Decided April 20, 1998.

James C. Cothran, Jr., Spartanburg, for appellant.

John D. Hawkins, of Lister & Hawkins, Spartanburg, for respondent.

HEARN, Judge:

Stephen Clear (Father) appeals from an order of the family court granting Tina Clear (Mother) custody of the parties' two children. We affirm.

## FACTS

The parties were married in 1986 in Missouri. They have two children, Aimaeann and Zack, who were ages seven and four at the time of trial. The parties resided in Missouri until 1992 when Father re-enlisted in the Navy and was stationed in Charleston, South Carolina.

When the parties finally separated in August 1994, the children remained with Mother. At that time, Father was still in the Navy and Mother was working two jobs and attending nursing school. In April 1995, Mother began dancing at a topless club. When Father returned home from sea duty that year, Mother informed him she was a topless dancer. The parties agreed not to tell the children about Mother's employment.

When Father finished his tour of duty in June 1995, he moved back to Missouri. Father obtained a divorce in Missouri in December 1995 and remarried shortly thereafter. Except for extensive visitation with Father in Missouri in the summers of 1995 and 1996, the children remained with Mother. Mother was still working as a dancer at the time of trial in November 1996. Her work schedule permits her to be with the children during the day and her brother cares for the children at night. Mother testified she began dancing because she was receiving no regular support from Father and because it was more lucrative than any other job she could find.

There is some dispute as to the level and regularity of child support provided by Father prior to the commencement of this action. Mother testified that from their separation in August 1994 until April 1995, Father paid her rent. However, she testified Father sent her only $50 in support after he returned to Missouri. Father disputed that he had not provided regular support, noting he did the best he could from where he was located. In any event, by Temporary Order dated May 16, 1996, Father was ordered to begin paying regular child support.

At trial, Mother testified Father's heavy drinking, drug use, and partying brought about their separation. Father admitted he drank heavily and used marijuana and methamphetamine during the early part of the marriage but denied using any drugs since 1991 or 1992. He testified that he and his present wife drink socially but denied either has a drinking problem. Despite Father's somewhat checkered past, it appears he presently has a stable job and a good marriage.

Near the time of the parties' separation in 1994, Mother had an extramarital affair. When confronted with the affair and presented with the possibility that she might lose custody of

the children, Mother made two unsuccessful and arguably insincere attempts to harm herself. She threatened to shoot herself with a gun containing no bullets and broke a cup on her wrist. After this second episode, she was admitted to Charleston Hospital for one day.

The Guardian ad Litem recommended that Father be granted custody of the children. The Guardian specifically stated he did not consider the mother's career as being dispositive as to his recommendation for custody. Nonetheless, his rationale as communicated to the court at trial centered mainly on Mother's occupation and her failure to establish "any good case about how this lifestyle she presently has is going to be fleeting or that it's really one out of desperation." The Guardian also noted Mother's job requires the children to spend evenings at a babysitter's until she picks them up at approximately 2:30 a.m. In addition, the Guardian noted the parties' younger child would soon be enrolled in school, negating any benefit the children would derive from Mother being home during the day.

The trial judge stated in his order: "There has been only one complaint levied against [Mother]: her dancing occupation." He found, however, that Mother's job had not interfered with her duties as a parent, that she had been their primary caregiver since birth, and that the best interests of the children would be served by granting custody to her.

## DISCUSSION

On appeal, Father argues the family court erred in failing to award him custody of the children. Specifically, he asserts the family court issued an order unsupported by the facts, applied the functional equivalent of the tender years doctrine, and paid insufficient heed to the recommendations of the Guardian ad Litem. We disagree.

On appeal from the family court, this court has jurisdiction to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence. *Epperly v. Epperly*, 312 S.C. 411, 440 S.E.2d 884 (1994); *Chester County Dep't of Social Servs. v. Coleman*, 303 S.C. 226, 399 S.E.2d 773 (1990). We are not, however, required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a

better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 280 S.E.2d 541 (1981). Further, this broad scope of review does not relieve the appellant of the burden of convincing this court that the family court committed error. *Skinner v. King,* 272 S.C. 520, 252 S.E.2d 891 (1979). Because the appellate court lacks the opportunity for direct observation of the witnesses, it should accord great deference to trial court findings where matters of credibility are involved. *See Aiken County Dep't of Social Servs. v. Wilcox,* 304 S.C. 90, 403 S.E.2d 142 (Ct.App.1991). This is especially true in cases involving the welfare and best interests of children. *Id.*

In all child custody controversies, the welfare and best interests of the children are the primary, paramount, and controlling considerations. *Cook v. Cobb,* 271 S.C. 136, 245 S.E.2d 612 (1978). The family court must consider the character, fitness, attitude, and inclinations on the part of each parent as they impact on the child. *Epperly v. Epperly,* 312 S.C. 411, 440 S.E.2d 884 (1994). Psychological, physical, environmental, spiritual, educational, medical, family, emotional, and recreational aspects of the child's life should also be considered. *Wheeler v. Gill,* 307 S.C. 94, 413 S.E.2d 860 (Ct.App.1992). "The totality of the circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed." *Davenport v. Davenport,* 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975).

■ The family court judge correctly reasoned that Father's case against Mother centers mainly, if not exclusively, on Mother's dancing occupation. However, the record before us contains no evidence that Mother's topless dancing adversely affected her ability to parent the parties' two children. Absent such evidence, Mother's occupation is not a relevant consideration in denying her custody.

■ We recognize that some may consider Mother's occupation, though legal, immoral. Nonetheless, the effect which a parent's morality may have on his or her fitness to have custody is limited to what relevancy it has, either directly or indirectly, to the welfare of the child. *Id.; Stroman v. Williams,* 291 S.C. 376, 378, 353 S.E.2d 704, 705 (Ct.App.1987).

Moreover, custody is not to be used to penalize or reward a parent for his or her conduct. *Id.*

Nothing in this opinion should be construed as implying our approval of topless dancing as an occupation for mothers. Whether we approve or disapprove is not the issue. It is not necessary for the court to make a moral judgment on a parent's lifestyle absent evidence that the lifestyle adversely affects the welfare of the child. *Id.* at 381, 353 S.E.2d at 707. (Sanders, C.J., concurring). "We are not in the business of gratuitously judging the private lives [and morals] of other people." *Id.*

We find no merit to Father's contention the family court applied the functional equivalent of the tender years doctrine in awarding custody to Mother. The "tender years doctrine," in which there is a preference for awarding a mother custody of a child of tender years, was abolished effective May 18, 1994. S.C.Code Ann. § 20-7-1555 (Supp.1997). Here, it is evident from the family court's order that the court considered factors such as which parent evolved as the children's primary caregiver and the conduct, attributes, and resources of each parent. These are proper considerations in making child custody determinations. *See, e.g., Parris v. Parris,* 319 S.C. 308, 460 S.E.2d 571 (1995) (primary caretaker versus primary wage earner status is a factor to be considered in custody determinations).

We also find no merit to Father's argument the family court failed to give adequate consideration to the recommendations of the Guardian ad Litem. The role of the Guardian ad Litem in making custody recommendations is to aid, not direct, the court. Ultimately, the custody decision lies with the trial judge. *See Shainwald v. Shainwald,* 302 S.C. 453, 395 S.E.2d 441 (Ct.App.1990) (the Guardian ad Litem does not usurp the judge's function). Here, the family court explicitly considered but rejected the Guardian's recommendation. Under the facts of this case, we find no abuse of discretion in the court's decision not to adopt the Guardian's recommendation.

For the foregoing reasons, the decision of the family court is **AFFIRMED.**

GOOLSBY and STILWELL, JJ., concur.