**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Peter Kucera, Respondent,

v.

Ashley Moss, Appellant.

Appellate Case No. 2015-001665

———————————

Appeal From Greenville County
Alex Kinlaw, Jr., Family Court Judge

———————————

Unpublished Opinion No. 2018-UP-140
Submitted February 9, 2018 – Filed April 4, 2018

———————————

**REVERSED IN PART, AFFIRMED IN PART, and REMANDED**

———————————

Gwendolynn Wamble Barrett, of Barret Mackenzie, LLC, of Greenville, for Appellant.

Peter Kucera, of Greenville, pro se.

———————————

**PER CURIAM:**  Ashley Moss appeals the ruling of the family court awarding her and Peter Kucera joint custody of their minor child.  Moss argues there was not a substantial change in circumstances warranting a change in custody.  Additionally, Moss argues joint custody and the family court's award of expanded visitation to

Kucera are not in their child's best interests.[1]  We reverse in part, affirm in part, and remand.

## FACTS/PROCEDURAL HISTORY

Moss and Kucera met in Colorado and were involved in a romantic relationship resulting in the birth of a daughter (Child) in January 2005.  Moss and Kucera never married.  The relationship ended, Moss relocated to Greenville, South Carolina, and Kucera soon followed.

In December 2006, Moss filed a complaint seeking full custody of Child with Kucera having standard visitation.  The court entered a Final Custody Order in November 2008 granting, *inter alia*, Moss full custody and requiring Kucera to pay child support.  In addition, Kucera was given the following visitation schedule: every other weekend, from Friday at 4:00 p.m. to until 6:00 p.m. Sunday; an overnight on alternating Thursdays; three weeks during the summer months; alternate holidays; and Father's Day.

Subsequently, Moss became romantically involved with Mark Ritchie.  Moss became pregnant, and she and Ritchie got engaged.  Moss, Ritchie, and Child moved in together in January 2011, and Moss and Ritchie were married in May of that year.  Moss and Ritchie's son was born in June 2011.

The parties operated under the 2008 Final Custody Order until April 2011, when Kucera filed a complaint seeking full custody based on a substantial change in circumstances.  The court issued a temporary order in November 2011, maintaining the custody and visitation arrangement in the 2008 Final Custody Order.  Additionally, Kucera's child support obligation was recalculated based on his unemployment, a Guardian ad Litem was appointed to represent Child, and each party was ordered to undergo a psychological evaluation.

The trial commenced June 25, 2013, and continued through June 28.  On October 10, 2013, the court declared a mistrial because the parties were unable to finish in the time allotted.  However, in November 2013, the court *sua sponte* reconsidered its decision to order a mistrial and ordered a continuance requiring the parties to meet certain obligations, by no specific date, before the final hearing would recommence.  Without any action having been taken by the parties, the court held a status conference in April 2014.  The following month, the court found Moss had

---

[1] Kucera did not file a brief in response to Moss's appeal.

met her obligations as set forth in the November 2013 Continuance Order but Kucera had not. The court ordered Kucera to meet his obligations or be declared in contempt. The trial finally concluded in November 2014.

The court issued its Final Custody Order in March 2015, granting Moss and Kucera joint custody of Child and expanding Kucera's visitation by an extra overnight visit each week—Kucera was to return Child to school on Monday mornings following his weekend visitation rather than return Child to Moss on Sunday. In addition, the court recalculated child support, held Kucera in contempt for various violations of the 2008 Final Custody Order, and awarded Moss attorney's fees relating to her meritorious contempt actions. The order left the remaining provisions of the 2008 Final Custody Order in place. Moss filed a motion to reconsider alleging, among other things, the court erred in granting joint custody and in failing to order supervised and restricted visitation for Kucera. The court denied the motion to reconsider and this appeal followed.

## ISSUES ON APPEAL

1. Was there a substantial change in circumstances warranting a change in custody?

2. Is joint custody and Kucera's expanded visitation in Child's best interests?

## STANDARD OF REVIEW

"[T]he proper standard of review in family court matters is de novo . . . ." *Stoney v. Stoney*, 421 S.C. 528, 531, 809 S.E.2d 59, 60 (2017); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). In a de novo review, the appellate court is free to make its own findings of fact but must remember the family court was in a better position to make credibility determinations. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651–52. "Consistent with this de novo review, the appellant retains the burden to show that the family court's findings are not supported by a preponderance of the evidence; otherwise, the findings will be affirmed." *Ashburn v. Rogers*, 420 S.C. 411, 416, 803 S.E.2d 469, 471 (Ct. App. 2017).

## LAW/ANALYSIS

## I.    Change in Circumstances

Moss had full custody of Child under the 2008 Final Custody Order. The 2015 Final Custody Order awarded Moss and Kucera joint custody of Child, with Moss having primary placement. Moss argues there has not been a substantial change in circumstances warranting a change in custody. We agree.

"To warrant a change of custody, the party seeking the change bears the burden of establishing 'a material change of circumstances substantially affecting the child's welfare.'" *Housand v. Housand*, 333 S.C. 397, 400, 509 S.E.2d 827, 829 (Ct. App. 1998) (quoting *Allison v. Eudy*, 330 S.C. 427, 429, 499 S.E.2d 227, 228 (Ct. App. 1998)). "A change in circumstances justifying a change in the custody of a child simply means that sufficient facts have been shown to warrant the conclusion that the best interests of the child[] [will] be served by the change." *Latimer v. Farmer*, 360 S.C. 375, 381, 602 S.E.2d 32, 35 (2004) (quoting *Stutz v. Funderburk*, 272 S.C. 273, 278, 252 S.E.2d 32, 34 (1979)).

> The change of circumstances relied on for a change of custody must be such as would substantially affect the interest and welfare of the child. Because the best interest of the child is the overriding concern in all child custody matters, when a non-custodial parent seeks a change in custody, the non-custodial parent must establish the following: (1) there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the overall best interests of the child.

*Id.* "When determining whether a change of circumstance[s] has been established in a custody case, the issue is whether the evidence, *viewed as a whole*, establishes that the circumstances of the parties have changed enough that the best interests of the children will be served by changing custody." *Housand*, 333 S.C. at 405 n.5, 509 S.E.2d at 832 n.5; *see also Hollar v. Hollar*, 342 S.C. 463, 473, 536 S.E.2d 883, 888 (Ct. App. 2000) ("[T]he totality of circumstances peculiar to each case constitutes the only scale upon which the ultimate decision [to award a change in custody] can be weighed." (quoting *Davenport v. Davenport*, 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975))).

The family court awarded a change in custody—granting joint custody, with Moss having primary placement. However, the family court's order does not state what factual findings support its conclusion to award a change in custody. The only reasoning the court gave was that there was nothing in the record indicating Kucera

did not love Child or that Kucera was a danger to Child. We find the family court's reasoning does not support a finding that the circumstances of the parties have changed. In fact, the family court never addressed the issues Kucera alleged constituted a change in circumstances. Therefore, we find the family court erred in awarding a change in custody.

Regardless, we will address the merits of Kucera's original allegations because the record is well developed, and the issue affects the rights of a minor. *See Thomson v. Thomson*, 377 S.C. 613, 623, 661 S.E.2d 130, 135 (Ct. App. 2008) ("When an order from the family court fails to make specific findings of fact in support of the court's decision, the appellate court may remand the matter to the family court or, '[when] the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.'" (quoting *Badeaux v. Davis*, 337 S.C. 195, 203, 522 S.E.2d 835, 839 (Ct. App. 1999))); *see also Galloway v. Galloway*, 249 S.C. 157, 160, 153 S.E.2d 326, 327 (1967) ("The duty to protect the rights of minors has precedence over procedural rules otherwise limiting the scope of review[,] and matters affecting the rights of minors can be considered by this court [e]x mero motu."); *see, e.g., Tillman v. Oakes*, 398 S.C. 245, 250–52, 728 S.E.2d 45, 48–49 (Ct. App. 2012) (discerning and addressing the "factual findings to support the [family] court's decision" to change custody when the family court's reasoning was unclear).

Kucera's complaint alleged the following changes in circumstances were substantial and warranted a change in custody: (1) Moss was living with her boyfriend and expecting a child; (2) Moss took Child to a psychologist without informing Kucera; (3) Moss and Child stayed in Atlanta overnight without informing Kucera; and (4) Moss is adamant about strict compliance with the 2008 Final Custody Order. We address each allegation in turn.

## A. Living Arrangement

The 2008 Final Custody Order prevented any party from having Child overnight in the presence of an adult party of the opposite sex to whom they were not related to by blood or marriage. Moss and Ritchie lived together with Child from January 2011 to May 2011 while engaged. The couple married in May 2011. Even though this was a violation of the 2008 Final Custody Order, it does not constitute a substantial change in circumstances warranting a change in custody. The record is devoid of any evidence showing how this living arrangement negatively impacted Child's welfare. *See Latimer*, 360 S.C. at 381, 602 S.E.2d at 35 ("The change of circumstances relied on for a change of custody must be such as would substantially

affect the interest and welfare of the child."); *Routh v. Routh*, 328 S.C. 512, 520–21, 492 S.E.2d 415, 420 (Ct. App. 1997) (stating a parent's immorality is relevant only when it impacts the child's welfare). In addition, Moss is no longer violating the restriction—Moss and Ritchie are married and have a son together. Furthermore, Moss's remarriage is relevant to show her circumstances have improved. *Cf. Routh*, 328 S.C. at 520, 492 S.E.2d at 419 ("[R]emarriage is normally relevant to show improved circumstances on the part of a remarried parent seeking to obtain custody, not to show the deterioration of the circumstances of the custodial parent.").

## B. Psychologist Visit

Kucera alleged Moss violated the 2008 Final Custody order when Moss took Child to a psychologist. Kucera argued Moss's actions violated the order's requirement that both parties be given equal access to Child's medical providers. First, we find this is not a violation of the 2008 Final Custody Order because the order does not require the custodial parent to inform the non-custodial parent of a medical non-emergency within any specific time of its occurrence. Regardless, we fail to see how this isolated event has affected the welfare of Child or reflects poorly on Moss's fitness as a parent. *See generally Pinckney v. Hudson*, 294 S.C. 332, 333, 364 S.E.2d 462, 462 (1998) (finding a mother's violations of custody arrangements were not "a sufficient change of circumstances" warranting a change of custody because the violations were not constant, there wasn't a sufficient showing a custody change would be in the best interest of the child, and the violations had no bearing on the mother's fitness as a parent).

## C. Atlanta Visit

The 2008 Final Custody Order required any party traveling overnight and out of the state with Child to notify the other party one week prior to the travel taking place. Moss traveled to Atlanta overnight with Child without notifying Kucera. Although this failure to notify constituted a violation of the order, there is no evidence showing this violation affected Child's welfare or reflects poorly on Moss's fitness as a parent. *See generally Pinckney*, 294 S.C. at 333, 364 S.E.2d at 462 (finding a mother's violations of custody arrangements were not "a sufficient change of circumstances" warranting a change of custody because the violations were not constant, there wasn't a sufficient showing a custody change would be in the best interest of the child, and the violations had no bearing on the mother's fitness as a parent).

## D. Strict Adherence to Custody Order

Kucera also argues that, on one occasion, Moss's strict adherence to the custody arrangement placed Child in danger—when road conditions were unsafe due to snow and ice, Moss refused to allow Child to stay overnight with Kucera after his visitation period had ended. However, one isolated instance of Moss's inflexibility is not sufficient to support a claim alleging a substantial change in circumstances. *See Housand*, 333 S.C. at 405 n.5, 509 S.E.2d at 832 n.5 ("When determining whether a change of circumstance[s] has been established in a custody case, the issue is whether the evidence, *viewed as a whole*, establishes that the circumstances of the parties have changed enough that the best interests of the children will be served by changing custody."). Further, "custody is not to be used to penalize or reward a parent for his or her conduct." *Hollar*, 342 S.C. at 477, 536 S.E.2d at 890 (quoting *Clear v. Clear*, 331 S.C. 186, 191, 500 S.E.2d 790, 792 (Ct. App. 1998)); *see Smith v. Smith*, 261 S.C. 81, 85, 198 S.E.2d 271, 273 (1973) ("The court may not award or change custody to punish a parent for acting in violation of the orders of the court.").

Under the totality of the circumstances, we find Kucera has failed to show a substantial change in circumstances affecting the welfare of Child. *Hollar*, 342 S.C. at 473, 536 S.E.2d at 888 ("[T]he totality of circumstances peculiar to each case constitutes the only scale upon which the ultimate decision [to award a change in custody] can be weighed." (quoting *Davenport*, 265 S.C. at 527, 220 S.E.2d at 230)). Further, Kucera has not carried his burden of showing a change in custody would be in the overall best interests of Child. *See Latimer*, 360 S.C. at 381, 602 S.E.2d at 35 ("[T]he non-custodial parent must establish the following: (1) there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the overall best interests of the child."); *Hollar*, 342 S.C. at 477, 536 S.E.2d at 890 (finding the record did not establish either a change of circumstances justifying a change of custody or that a change of custody would be in the child's best interest). Therefore, we reverse the family court's decision to change custody.

## II.    Changed Visitation

Kucera's complaint requested sole custody of Child but never requested expanded visitation as an alternative remedy. Moss counterclaimed, requesting restricted visitation based upon changed circumstances. The family court awarded expanded visitation to include an extra overnight visit with Child—instead of returning Child to Moss on the Sunday ending his weekend visitation, Kucera could keep Child overnight and take her to school on Monday. Moss argues the family

court erred in awarding expanded visitation and in not awarding restricted and supervised visitation. We agree the family court should not have expanded visitation, but we are hesitant to restrict Kucera's visitation as Moss suggests.

When a court has previously established a visitation schedule, "the moving party must show a change of circumstances to warrant a change of visitation." *Ingold v. Ingold*, 304 S.C. 316, 320, 404 S.E.2d 35, 37 (Ct. App. 1991); *see King v. Gardner*, 274 S.C. 493, 495, 265 S.E.2d 260, 262 (1980) ("[A] judicial award of the custody of a child and the fixing of visitation rights is not final and changed circumstances may authorize the change of custody or visitation rights in the future." (quoting *McGregor v. McGregor*, 255 S.C. 179, 183, 177 S.E.2d 599, 600–01 (1970))). Similar to changes of custody, modification of visitation must be in the best interests of the child. *Smith v. Smith*, 386 S.C. 251, 272, 687 S.E.2d 720, 731 (Ct. App. 2009) ("The welfare and best interests of the child are the primary considerations in determining visitation."). A change in circumstances justifying a change in visitation must adversely affect the welfare of the child. *See Ingold*, 304 S.C. at 320, 404 S.E.2d at 37 (finding an insufficient change of circumstances to justify reducing father's visitation because the mother had not shown how the visitation adversely affected their child's welfare); *Duck v. Jenkins*, 297 S.C. 136, 139, 375 S.E.2d 178, 179 (Ct. App. 1988) (stating visitation privileges can be denied when "their exercise would injure the child emotionally").

It is not in a child's best interest to grant expanded visitation to a non-custodial parent when the child's parents lack cooperation and communication. *See Lewis v. Lewis*, 400 S.C. 354, 367, 734 S.E.2d 322, 329 (Ct. App. 2012) ("Our review of the preponderance of the evidence convinces us that, given the lack of cooperation and communication between the parties, allowing [the father] more extensive visitation would not be in [the child's] best interest."). Additionally, expanded visitation is not warranted when there has not been a showing the current visitation negatively affects the relationship between the non-custodial parent and the child. *See id.* at 368, 734 S.E.2d at 329. Furthermore, supervised or limited visitation is warranted when based upon a psychiatrist's and Guardian ad Litem's recommendations. *See Nash v. Byrd*, 298 S.C. 530, 536–37, 381 S.E.2d 913, 917 (Ct. App. 1989) (noting a psychiatrist and Guardian ad Litem each recommended supervised or restricted visitation).

Here, the court expanded Kucera's visitation based merely upon his love for Child. As noted above, we find the family court erred in expanding visitation because the court did not set forth the factual findings to support its order. *See* Rule 26(a), SCRFC (requiring orders from the family court to "set forth the specific findings of fact and conclusions of law to support the court's decision"); *cf. Tillman*,

398 S.C. at 252, 728 S.E.2d at 49 (finding the family court's order violated Rule 26(a) when it failed to set forth all of the specific findings of fact supporting its decision to change custody). Furthermore, Kucera never requested a change in visitation. Even if we were to address Kucera's alleged changes in circumstances in the context of a change in visitation, we find he has failed to show how those changes have affected Child's welfare warranting an expansion in his visitation. In addition, given the lack of cooperation between Moss and Kucera and their inability to communicate cordially, it would not be in Child's best interests to expand Kucera's visitation. Therefore, we find the family court erred in expanding Kucera's visitation.

Moss argues a change in circumstances has occurred warranting the reduction or supervision of Kucera's visitation. To show a change in circumstances, Moss provides numerous examples of Kucera's behavior that show his overbearing personality and his general uncooperativeness. Kucera is rude to Child's teachers, has used profanity in front of Child, has physically taken Child away from Moss when it is his time for visitation, and has verbally harassed Moss. Moss has also provided examples of when Kucera violated the visitation schedule—ranging from Kucera returning Child to Moss half an hour after his visitation had ended to keeping Child overnight after his visitation had ended.

We share a similar sentiment to the family court in refusing to restrict Kucera's visitation. *See Lewis*, 392 S.C. at 385, 709 S.E.2d at 652 (noting the family court is in the best position to make credibility determinations). The Guardian ad Litem did not recommend visitation restrictions. Furthermore, even though Dr. Watson—the psychologist who performed evaluations of Kucera and Moss—recommended Kucera's contact with Child be reduced or supervised, this recommendation was conditioned upon a future showing that Kucera could not move beyond his rejection by Moss. The record does not show there has been such a showing. *See Nash*, 298 S.C. at 536–37, 381 S.E.2d at 917 (finding the family court's "determination that court ordered visitation is not in the best interest of the child" was proper considering a psychiatrist's and Guardian ad Litem's recommendations that visitation should be limited and supervised).

Additionally, Child is now thirteen years old and in the second year of middle school. The actions Moss argues support the change in visitation occurred when Child was in pre-school, kindergarten, and elementary school. Although Kucera's interactions with persons other than Child cause us some concern, the evidence does not show his actions have affected the welfare of Child in such a way that restricted and supervised visitation is warranted. Furthermore, the behavior Moss argues

should support a change in circumstance is addressed by the 2015 Final Custody Order, which prohibits parties from speaking negatively about each other or each other's family in front of Child and restricts them from harassing or annoying one another.

In sum, we find the family court erred in awarding Kucera expanded visitation because there was no showing of a change in circumstances warranting the change in visitation. Therefore, we reverse the family court's expansion of Kucera's visitation. We also find the record does not support restricting Kucera's visitation or requiring his visitation be supervised.

In conclusion, we reverse the family court's award of joint custody and expansion of Kucera's visitation. We remand for an order consistent with this opinion.

**REVERSED IN PART, AFFIRMED IN PART, and REMANDED.**[2]

**HUFF, GEATHERS, and MCDONALD, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.