THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE 
 CITED OR RELIED ON IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Norris Samuel Law, III,       
Respondent,
 
 
 

v.

 
 
 
Penny Jean Morris Law,       
Appellant.
 
 
 

Appeal From Berkeley County
Robert R. Mallard, Family Court Judge

Unpublished Opinion No. 2004-UP-155
Heard February 11, 2004  Filed March 
 9, 2004

AFFIRMED IN PART, REVERSED IN PART, and REMANDED

 
 
 
David L. DeVane, of Charleston, for Appellant.
Margaret D. Fabri, of Charleston, for Respondent.
 
 
 

PER CURIAM: Norris Samuel Law, 
 III (Father) brought an action against Penny Jean Morris Law (Mother) alleging 
 several changes in circumstances that would justify a change in custody of their 
 daughter.  The family court judge granted custody to Father with visitation 
 to Mother every other weekend, alternating holidays, and one month in the summer.  
 Mother appeals.  We affirm in part, reverse in part, and remand.
FACTS
Mother and Father separated 
 in June of 1997 and entered into an agreement concerning the custody of their 
 then two-year-old daughter, Grayson.  The agreement provided they would share 
 joint legal custody of Grayson, with Mother having primary physical custody 
 and Father having secondary physical custody with liberal rights of visitation.  
 The parties also agreed that neither Mother nor Father would have the minor 
 child in their home if a paramour was visiting overnight.  The parties divorced 
 in September of 1997 and incorporated the agreement into their final decree 
 of divorce.  
At some time near the end of 1997, Father 
 began living with his girlfriend, Jennifer, whom he married in January 1999.  
 Mother also began living with her boyfriend, Jason Belcher, during 1997.  Mother 
 later married Mr. Belcher on August 22, 2000.  From 1997 to August 2000, Mother 
 and Father shared custody of Grayson on nearly a fifty-fifty basis.  Initially, 
 Mother had physical custody of Grayson one week and Father had physical custody 
 the next week.  At some point in 1998, Mother proposed a modified visitation 
 schedule, and the parties agreed to Grayson alternating three days with Mother 
 and two days with Father.  
According to Father, Mother attempted 
 to change the visitation schedule every three months or so.  Father testified 
 that in order to ensure he had time with Grayson, he would pay more money for 
 daycare or dance class, in addition to his child support obligation.  In September 
 1999, Mother sent Father a letter in which she attempted to change Fathers 
 visitation to every other Friday through Monday.  Mother also set forth Fathers 
 different payment obligations and informed Father she would be performing all 
 mothering duties, such as taking Grayson for doctor visits, buying clothes, 
 and making decisions regarding Graysons extracurricular activities.  Following 
 this letter, the parties ultimately compromised on an alternative visitation 
 schedule giving Father three weekends plus one week with Grayson every month.  
 However, in August of 2000, Mother phoned Father and notified him that because 
 Grayson was beginning elementary school his visitation would be limited to every 
 other weekend.  Father tape recorded this telephone conversation.  
On August 21, 2000, Father filed this 
 action alleging a substantial change in circumstances supporting a change in 
 custody and seeking an emergency ex parte order of custody.  Father 
 pled, in the alternative, for joint custody of Grayson, with the non-custodial 
 parent to have liberal rights of visitation which he defined as a minimum of 
 fifty percent (50%) of the time, temporarily and permanently.  Mother counterclaimed 
 for sole custody.  An ex parte order granted custody to Father 
 on August 21, 2000, and a hearing was set for August 23, 2000.  At the hearing, 
 Father was granted temporary custody.  Mothers motion for a stay of the temporary 
 order and petition for supersedeas were denied.  
At the final merits hearing in June 2001, 
 Mother objected on several occasions to Fathers attorneys line of questioning, 
 arguing that because this was an action for a change of custody rather than 
 a de novo proceeding, Father should not be permitted to introduce 
 any evidence other than that relating to the alleged changes in circumstances.  
 The family court judge admitted the testimony, finding it relevant.  In addition, 
 a transcript of the August 2000 telephone conversation was admitted at the hearing 
 over Mothers objection.  The family court issued a final order on September 
 28, 2001, granting sole custody to Father, with visitation for Mother to include 
 alternating weekends, alternating holidays, and one month in the summer.  Mother 
 appeals.     
STANDARD OF REVIEW
Decisions affecting the custody 
 of a child are matters left principally to the discretion of the family court.   
 Shirley v. Shirley, 342 S.C. 324, 330, 536 S.E.2d 427, 430 (Ct. App. 
 2000).  However, in appeals from the family court, this court has the authority 
 to find facts in accordance with our view of the preponderance of the evidence.  
 Greene v. Greene, 351 S.C. 329, 335, 569 S.E.2d 393, 397 (Ct. App. 2002).  
 This broad scope of review does not require us to disregard the findings of 
 the family court.  Id.  Nor does it require us to ignore the fact that 
 the family court judge, who saw and heard the witnesses, was in a better position 
 to evaluate their credibility and assign comparative weight to their testimony.  
 Id. (citation omitted).  An appellate court should be reluctant to substitute 
 its own evaluation of the evidence on child custody for that of the family court.  
 Shirley, 342 S.C. at 331, 536 S.E.2d at 430.
LAW/ANALYSIS
I.       Custody
In arguing the family court erred in 
 awarding custody to the Father, Mother asserts that the court incorrectly treated 
 this case as a de novo custody dispute instead of a change of 
 custody dispute.  See Allison v. Eudy, 330 S.C. 427, 429, 499 
 S.E.2d 227, 228 (Ct. App. 1998) (stating that a finding in the family courts 
 order denying a motion for reconsideration that the scales tip in [the non-movants 
 favor], indicated the family court incorrectly treated the change in custody 
 action as a de novo custody dispute).  We disagree.  
In all child custody cases, the paramount 
 considerations are the childs welfare and best interests.  Hollar v. Hollar, 
 342 S.C. 463, 472, 536 S.E.2d 883, 888 (Ct. App. 2000).  The party seeking a 
 change in custody assumes the burden of proof and must show changed circumstances 
 occurring subsequent to the entry of the original custody order that substantially 
 affect the interest and welfare of the child.  See id. at 473, 
 536 S.E.2d at 888.  In determining a change in custody, the family court should 
 consider how the custody decision will impact all areas of the childs life 
 and must assess each partys character, fitness and attitude as they impact 
 the child.  Shirley, 342 S.C. at 330, 536 S.E.2d at 430.   There are 
 no hard and fast rules for determining when to change custody and the totality 
 of the circumstances peculiar to each case constitutes the only scale upon which 
 the ultimate decision can be weighed.  Id. (quoting Davenport v. 
 Davenport, 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975)).  In order to 
 determine whether a change in circumstances has been shown, the court must consider 
 the facts leading up to and surrounding the present controversy.  Stutz v. 
 Funderburk, 272 S.C. 273, 277, 252 S.E.2d 32, 34 (1979).  The usual factors 
 family courts consider in determining the best interests of children are appropriate 
 considerations.  Glanton v. Glanton, 314 S.C. 58, 60 n. 3, 443 S.E.2d 
 810, 811 n.3 (Ct. App. 1994).
In support of Mothers argument that 
 the family court incorrectly treated this change of custody case as a de 
 novo custody dispute, Mother asks this court to consider, (1) Fathers 
 testimony, over Mothers objection, about Mothers family background and home 
 life, (2) comments made by the family court judge in a telephone conference, 
 and (3) that the final order mentioned the standard used for a de novo 
 custody case, in addition to the standard for a change in custody case.  We 
 do not believe Mothers assertions are sufficient to find the family court incorrectly 
 treated this case as a de novo custody dispute.  
First, the testimony concerning Mothers 
 family background and home life, which was admitted over Mothers objections, 
 does not demonstrate that the judge improperly treated the case as a de 
 novo dispute.  Rather, the testimony demonstrates that the judge properly 
 admitted evidence related to the childs best interest and the totality of the 
 circumstances.  See Hollar, 342 S.C. at 472-73, 536 S.E.2d at 
 888; Shirley, 342 S.C. at 330, 536 S.E.2d at 430.  
We likewise reject Mothers second argument 
 that the family court judges remarks made during a telephone conference that 
 Father presented a better situation do not demonstrate that the case was treated 
 de novo.  Initially we note that no transcript of the telephone 
 conference appears in the record.  See Bonaparte v. Floyd, 291 
 S.C. 427, 444, 354 S.E.2d 40, 50 (Ct. App. 1987) (stating that the appellant 
 has the burden of furnishing a sufficient record for this courts review).   
 Mother asks this court to consider her attorneys restatement of these remarks 
 during a Rule 59(e), SCRCP, hearing as evidence that the family court judge 
 not only made the remarks but that the judge improperly treated the case as 
 a de novo custody dispute.  However, it is well settled law that 
 arguments of counsel do not constitute evidence.  See e.g. Sosebee 
 v. Leeke, 293 S.C. 531, 535, 362 S.E.2d 22, 24 (1987).  Further, these remarks 
 are not reflected in the final change of custody order except in the orders 
 consideration of the best interests of the child and the totality of the circumstances.   
 To the extent that the final order and the judges remarks at the Rule 59(e) 
 hearing are in conflict, the written order controls.  See Corbin v. 
 Kohler Co., 351 S.C. 613, 621, 571 S.E.2d 92, 97 (Ct. App. 2002).  The final 
 order does not improperly use the de novo custody standard in 
 changing custody as Mother argues.  Mother is correct in that the order concludes, 
 based on the totality of the circumstances and the best interests of the child, 
 that Father should have the primary, sole custody of Grayson.  However, Mother 
 overlooks the courts initial determination that Father has shown a substantial 
 change in circumstance since the time of the parties agreement and original 
 custody order which impacts and affects the best interest of the child.  The 
 order also sets forth several changes in circumstance to support this finding.  
 It was only after making this determination that the order addressed the childs 
 best interests based on the totality of the circumstances.  See Hollar, 
 342 S.C. at 472-73, 536 S.E.2d at 888; Shirley, 342 S.C. at 330, 536 
 S.E.2d at 430.  
Mother also argues that the family court 
 erred in awarding custody to Father because Father failed to show a substantial 
 change in circumstances materially affecting the best interests of the child.  
 Father alleged three changes in circumstance warranting a change in custody, 
 including: (1) Mothers unilateral decision to change Fathers visitation, (2) 
 Fathers remarriage and Graysons close relationship with his new wife, and 
 (3) Mothers cohabitation with her boyfriend in violation of the prior court 
 order.   The family court judge changed custody to Father based on the totality 
 of the circumstances, including all three of the changed circumstances asserted 
 by Father.  We affirm the family court order changing custody to the Father 
 based on Mothers decision to significantly reduce Fathers visitation with 
 Grayson.
In order to grant a change of custody, the 
 party seeking the change bears the burden of showing changed circumstances occurring 
 subsequent to the entry of the original custody decree.  Kisling v. Allison, 
 343 S.C. 674, 679, 541 S.E.2d 273, 275 (Ct. App. 2001) (quoting Shirley, 
 342 S.C. at 330, 536 S.E.2d at 430).  The change in circumstance relied on must 
 be one that would substantially affect the interest and welfare of the child, 
 not merely the wishes or convenience of the parties.  Id. at 679, 541 
 S.E.2d at 275-76.
It was error for the family court judge 
 to consider Mothers live-in relationship to be a change of circumstances.  
 A parents morality, while a proper factor for consideration, is limited in 
 its force to what relevancy it has, either directly or indirectly, to the welfare 
 of the child.  Stroman v. Williams, 291 S.C. 376, 378, 353 S.E.2d 704, 
 705 (Ct. App. 1987) (citation omitted) (finding no material change in circumstances 
 occurred from mothers live-in relationship with lesbian partner where childs 
 welfare was not adversely affected).  In the present case, there is no evidence 
 showing Grayson was adversely affected by Mother and Stepfather living together 
 prior to marriage.  In fact, Father agreed that both Mother and Stepfather are 
 positive influences in Graysons life, and the Stepfather has assisted as [a 
 stepparent] in raising her, nurturing her, and attending to her needs.  In 
 addition, Father has had knowledge of Mothers cohabitation since 1997, and 
 Father himself cohabitated with his present wife prior to their marriage in 
 1999.  
Further, any adverse affect Mothers 
 cohabitation may have had on her moral fitness was remedied by Mothers subsequent 
 marriage to her boyfriend.  See Sealy v. Sealy, 295 S.C. 281, 
 284, 368 S.E.2d 85, 87 (Ct. App. 1988) ([R]emarriage which restores moral 
 fitness has been recognized as a factor to be considered in awarding change 
 of custody.); Baer v. Baer, 282 S.C. 362, 365, 318 S.E.2d 582, 583 (Ct. 
 App. 1984) (finding mothers marriage to her paramour reinstated her moral fitness).  
 Finally, we do not see any merit to Fathers argument that Mothers remarriage 
 demonstrated her lack of judgment because it occurred two days before the emergency 
 hearing.  Mother obviously intended to marry her boyfriend prior to Father filing 
 the present action, as evidenced by the fact that a marriage license was acquired 
 ten days prior to the filing.  There is no evidence to suggest that the timing 
 of Mothers remarriage materially affected the best interest and welfare of 
 Grayson.  See Baer, 282 S.C. at 365, 318 S.E.2d at 584 (finding 
 no evidence to show that mothers sudden marriage substantially affected the 
 welfare of the children).
Moreover, although the consent order 
 prohibited Mother or Father from cohabiting with a member of the opposite sex 
 while Grayson was present, [t]he court may not award or change custody to punish 
 a parent for acting in violation of the orders of the court.  Smith v. Smith, 
 261 S.C. 81, 85, 198 S.E.2d 271, 273 (1973).  See also Stroman, 
 291 S.C. at  378, 353 S.E.2d at 705 (Custody is not to be used to penalize 
 or reward a parent for his or her conduct.).  In this case, it appears the 
 family court judge placed an unnecessary emphasis on Mothers cohabitation.  
 After Stepfathers redirect examination at the merits hearing, the family court 
 judge questioned Stepfather regarding the relationship he and Mother had with 
 their next-door neighbors, Charlie and Margie Creech, parents of the Honorable 
 Wayne M. Creech.  The judge asked, Do you have anything to do with Judge Creechs 
 parents?  In response to Stepfathers answer that the Creeches visited quite 
 often, the judge replied, Im surprised to hear that.  Because I wouldnt think 
 he would have anything to do with anybody thats living together without benefit 
 of marriage as straight-laced as he is and she is and Judge Creech is.  Im 
 surprised they would have anything to do without [sic] anybody thats living 
 together without the benefit of marriage.  The judges focus on this issue 
 continued when he questioned Margie Creech:

THE COURT: You gave an affidavit here and [it is] dated August 
 the 22nd in the year 2000.  If you would have known that [Mother 
 and Stepfather] were not married, would you have given that affidavit?  Would 
 you have given them an affidavit that said: How much you enjoyed them as neighbors 
 . . . .
MARGIE CREECH: Yes, sir, I would have.
THE COURT: Even though they were not married.  They were 
 living together without the benefit of marriage and they were bringing their 
 daughter in there, a young child in there?
MARGIE CREECH: Well, I dont guess that  Im not down on 
 anybody because of what they do because, you know, that I dont agree with it.  
 Actually, I pray for them.  So, therefore, they were good parents, so thats 
 all I could see is say what I see.  

We disagree with the emphasis placed on 
 the Mothers cohabitation prior to her present marriage by the family court 
 judge and with his finding that her cohabitation was a change in circumstances 
 sufficient to warrant a change in custody.  
Further, Fathers current living 
 situation alone, including his remarriage and Graysons relationship with Stepmother, 
 is not sufficient to support a change in custody.  See Fisher v. Miller, 
 288 S.C. 576, 578, 344 S.E.2d 149, 150 (1986) (stating remarriage alone is not 
 a substantial change of circumstances).  In this particular case, Grayson has 
 known both Stepmother and Stepfather since 1997, when both couples began dating.  
 Graysons relationship with her Stepmother in itself does not substantially 
 affect her welfare and thus does not qualify as a change in circumstances because 
 the evidence establishes that both Stepparents had been a positive influence 
 on her life for over three years prior to the time Father commenced this litigation.  

However, we agree with the family 
 court judges determination that Mothers unilateral decision to significantly 
 reduce Fathers visitation was a substantial change in circumstance materially 
 affecting the best interests and welfare of Grayson.  The original divorce decree 
 granted the parties joint custody of Grayson and gave Mother primary physical 
 custody and Father liberal rights of visitation.  The decree did not set forth 
 any guidelines as to how the parties should determine visitation nor did it 
 specifically define what liberal visitation would be.  Father exercised liberal 
 visitation from 1997 to August 2000.  During this time, Mother and Father shared 
 physical custody of Grayson.  Mother frequently attempted to change Fathers 
 visitation schedule by reducing Fathers visitation.  On each occasion, the 
 parties successfully negotiated an alternate visitation schedule, which gave 
 Father more time with his daughter.  Father testified that he would have to 
 agree to give Mother more money or take on additional expenses in order to have 
 more time with Grayson.  However, in August of 2000, Mother phoned Father and 
 notified him that because Grayson had started elementary school his visitation 
 would be limited to every other weekend.   Based on the transcript of this conversation, 
 Mother was unwilling to negotiate with Father regarding this new schedule and 
 even further reduced Fathers access to Graysons extracurricular activities 
 when he attempted to negotiate additional time with Grayson.  
Mother argues there is no evidence 
 in the record to show that her proposed visitation change negatively impacted 
 Grayson.  However, contrary to Mothers assertion, the requirement that the 
 party seeking to change custody must show a change of circumstances affecting 
 the interests and welfare of the child does not require a finding of a present 
 existing injury to the child.  See Routh v. Routh, 328 S.C. 512, 
 520, 492 S.E.2d 415, 419 (Ct. App. 1997).  Rather, [a]n existing unhealthy 
 environment that is likely to impact on the child in the future, affects the 
 welfare of the child.  Id. at 520, 492 S.E.2d at 420.   In this case, 
 Mother has made repeated attempts to diminish Fathers time with Grayson despite 
 the decree awarding the parties joint custody and the Father liberal visitation.  
 Mothers final proposal of visitation every other weekend suggested a significant 
 reduction in the time Grayson had been spending with Father.  It is uncontroverted 
 that Grayson was thriving under the previous visitation schedule, which allowed 
 her to see Father nearly fifty percent of the time.  The Mothers new proposed 
 visitation schedule provided for visitation with Father only every other weekend 
 and would significantly limit Fathers ability to be an active and positive 
 influence in Graysons life.  Further, the transcript of the tape recorded telephone 
 conversation demonstrates that Mother was unwilling to compromise on the issue 
 and even suggested that Mother retaliated against Father by further reducing 
 his visitation.  As such, we find Mothers decision to significantly reduce 
 Fathers visitation with Grayson substantially affected the welfare and best 
 interest of the child and constituted a change in circumstance warranting a 
 change in custody to Father.  See Watson v. Poole, 329 S.C. 232, 
 239, 495 S.E.2d 236, 240 (Ct. App. 1997) (changing custody to father based in 
 part on mothers unwillingness to facilitate the childs visitation with father 
 and arbitrarily canceling fathers visitation);  Morehouse v. Morehouse, 
 317 S.C. 222, 226-27, 452 S.E.2d 632, 634-35 (Ct. App. 1994) (upholding an award 
 of custody to father where mother was unwilling to encourage a relationship 
 between the child and father).
II.      Mothers Visitation
Mother argues the family court erred in 
 restricting her visitation to every other weekend, alternating holidays, and 
 one month in the summer.  We agree.
Although we affirm the change in custody 
 to Father due to Mothers unilateral decision to alter his visitation, we do 
 not believe the evidence supports an award of standard visitation to Mother.  
 The welfare and best interests of the child are the primary considerations in 
 determining visitation.  Paparella v. Paparella, 340 S.C. 186, 191, 531 
 S.E.2d 297, 300 (Ct. App. 2000).  The family court has broad discretion to decide 
 visitation issues and its decision will not be disturbed on appeal absent an 
 abuse of discretion.  Id.  
The type of visitation the judge granted 
 Mother in this case is considered standard visitation.  See Woodall 
 v. Woodall, 322 S.C. 7, 12, 471 S.E.2d 154, 158 (1996).  Although visitation 
 tantamount to divided custody is disfavored, in certain circumstances courts 
 will expand visitation beyond standard.  See id. (stating that 
 visitation tantamount to divided custody is avoided).  But see 
 S.C. Code Ann. § 20-7-420(42) (Supp. 2003) (The family court shall have exclusive 
 jurisdiction . . . [t]o order joint or divided custody where the court finds 
 it is in the best interest of the child.);  Paparella, 340 S.C. at 191, 
 531 S.E.2d at 300 (finding the evidence did not support an award of standard 
 visitation to the father and expanding his visitation).  In Paparella, 
 this court granted additional visitation to the father because he was very involved 
 in raising his children and the mother testified she thought father should receive 
 more than just standard visitation.  340 S.C. at 191, 531 S.E.2d at 300.  Similarly, 
 there is overwhelming evidence in this case, including testimony from all four 
 parents, teachers, family members, and neighbors showing Grayson was thriving 
 on the previous visitation schedule, which allowed her to see both parents virtually 
 equally.  Father testified both parents had been very active in Graysons life.  
 Father also agreed it was healthy for Grayson to see both of her parents at 
 her ballgames and dance recitals.  Just as in Paparella, Father stated 
 he thought Mother should receive more than standard visitation.  He believed 
 both parents should have liberal access to Grayson.  He agreed if he were 
 in Mothers position, alternating weekends would not be fair.  Father even agreed 
 that the standard visitation would be detrimental to Graysons well-being and 
 that all four parents should have equal access to her.  In fact, Father pled, 
 in the alternative, for a continuation of the joint custody arrangement the 
 parties had previously enjoyed.  
Mother testified she wanted the visitation 
 arrangement to go back to the way it was before she changed it, where both Mother 
 and Father spent equal amounts of time with Grayson.  Mother admitted it was 
 a mistake for her to change the schedule.  Referring to the every other weekend 
 visitation schedule, she stated, I dont believe its healthy for anyone to 
 be away from their child for that long, and that standard visitation is not 
 in Graysons best interests.  
In addition to the testimony of family and 
 friends, the guardian ad litem testified that it would be in Graysons best 
 interests for her to spend time equally at each of her parents homes.  
Based on the above, we reverse the family 
 courts order granting standard visitation to Mother.  While Father remains 
 the primary, sole custodian, we find Mother should receive expanded visitation 
 and remand this issue to the family court to establish a schedule consistent 
 with this opinion.
III.     Guardian Ad Litems Recommendation
          Mother argues the family court erred 
 in failing to give proper weight to the recommendation of the guardian ad litem 
 and in failing to consider joint custody as recommended by the guardian ad litem. 
 [1]   In light of our determination that the family court did not err in 
 changing custody to Father and our remand of the visitation issue, we need not 
 reach this argument on appeal.   See Futch v. McAllister Towing of 
 Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (finding 
 it unnecessary to review remaining issues when disposition of prior issues are 
 dispositive).
IV.     Attorneys Fees
Mother contends the family court erred 
 in awarding Father $23,469.79 in attorneys fees.  We agree that this issue 
 should be remanded for reconsideration by the family court judge in light of 
 our decision to remand the issue of visitation.
The award of attorneys fees 
 is left to the discretion of the family court and will not be disturbed absent 
 an abuse of discretion.  Smith v. Smith, 308 S.C. 492, 496, 419 S.E.2d 
 232, 234-35 (Ct. App. 1992).  The court considers the following factors in awarding 
 attorneys fees: (1) the beneficial results obtained; (2) the abilities of the 
 parties to pay; (3) the parties respective financial conditions; and (4) the 
 effect of the attorneys fees on each partys standard of living.  E.D.M. 
 v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992) (citing Glasscock 
 v. Glasscock, 304 S.C. 158, 403 S.E.2d 313 (1991)).  
Because we remand the issue of visitation 
 in order to give Mother expanded visitation, Fathers beneficial results have 
 been altered.  Therefore, we remand this issue for a de novo review 
 by the family court.  
As to Mothers arguments regarding the 
 specific hourly rate charged, the hours incurred, or the expert witness fees, 
 these issues are not preserved.  Mother did not raise any objection to these 
 issues at trial.  An issue not raised at trial is not properly before an appellate 
 court.  Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998).   
 However, because we are remanding the issue of attorneys fees de novo, 
 Mother may raise these issues on remand. 
CONCLUSION
We find the family court did not err in finding 
 a substantial change in circumstances based on Mothers unilateral decision 
 to alter Fathers visitation.  However, we find it is in Graysons best interests 
 to spend considerable time with both of her parents.  Therefore, we reverse 
 the family courts award of standard visitation to Mother, and remand this issue 
 for an increase in Mothers visitation consistent with this opinion.  We also 
 remand the issue of attorneys fees.  For the foregoing reasons, the decision 
 of the family court is 
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HEARN, C.J., ANDERSON and BEATTY,
J.J., concur.

 
 
 [1] We note that subsequent to the merits hearing in this case, the South 
 Carolina General Assembly specifically addressed the role of private guardians 
 ad litem in family court actions in which custody or visitation of a minor 
 child is at issue.  See S.C. Code Ann. § 20-7-1545 to  1557 (Supp. 
 2003).  In particular, the General Assembly made clear that a guardian may 
 only be appointed when the court will likely not be fully informed about 
 the facts of the case and there is a substantial dispute which necessitates 
 a guardian ad litem, and with both of the parties consent.  S.C. Code Ann. 
 § 20-7-1545 (Supp. 2003).  Additionally, the code provides that a guardian 
 must not include a recommendation concerning custody in the written report, 
 nor may the guardian include a recommendation at the merits hearing unless 
 specifically requested by the court for reasons specifically set forth in 
 the record.  S.C. Code Ann. § 20-7-1549(A)(6) (Supp. 2003).