2172

Johnny Lewis GLANTON, Respondent v. Lucile G. GLANTON, Appellant.

(443 S.E. (2d) 810)

Court of Appeals

*Stephen L. Hudson,* Columbia, *for appellant.*

*Kenneth M. Mathews,* Columbia, *for respondent.*

Submitted March 8, 1994.

Decided April 25, 1994.

CURETON, Judge:

In this domestic action, Lucile Glanton (the mother) appeals a family court order changing primary placement of the parties' minor child from her to Johnny Glanton (the father). Taking our own view of the evidence in this case, we find no abuse of discretion by the trial judge and, therefore, affirm.[1]

The parties were divorced in 1985 when their child was four years old. They were granted joint custody, but the child primarily resided with the mother. The father sought primary placement with him when the child's performance in school began to rapidly deteriorate.[2] At the time of the hearing in this case, the child was in the fifth grade.

When the child entered the fourth grade, his grades began to plunge and he received several F's for the first time. This decline continued and became more dramatic in the first nine-weeks of the fifth grade. The child received four F's, one D, and three C's, his worst performance in any single nine-week period. During this period, his score on an achievement test placed him at the late second grade level in reading and spelling, and suggested "significant difficulty in these two areas relative to his average intelligence level." The child's teacher echoed these concerns, testifying that reading is the child's fundamental problem, and it impacts on his grades in other subjects. Despite an indication that the child may suffer from dyslexia, the mother refused to allow completion of the necessary testing. Instead, she blamed the father and the child's teachers for his poor performance in school.

Halfway through the second nine-week period of the fifth grade, the family court awarded the father primary placement *pendente lite*. By the end of the second nine-weeks grading period, the child's grades had improved dramatically, rising from an overall average of 0.875 to 2.25 on an equally weighted four-point scale. While the child was in the father's primary placement, this improvement continued with the child's overall average rising to 2.75 for the third nine-week grading period.

---

[1] We decide this case without oral argument because oral argument would not aid the Court in resolving the issues.

[2] Prior to the order in this case, the father brought an action for a change of primary placement of the child from the mother to him. This request was denied in June, 1991 and a subsequent Petition for Rehearing denied in August, 1992.

The trial judge found that the child was "educationally endangered" due to the mother's inability or unwillingness to acknowledge or understand that the child is having great difficulty in school and rapidly falling behind his peers, particularly in the fundamental subject of reading. The trial judge also found that the father fully recognizes the scope of the problem and has taken affirmative steps to deal with the child's reading and other educational problems. Therefore, based on the child's improved performance while in the father's custody and the recommendation of the *guardian ad litem*, the court changed the primary placement of the child to the father. The joint custody arrangement, however, remained intact.

In challenging the change of primary placement, the mother argues the father failed to demonstrate a substantial change of circumstances since the last custody order.[3] Specifically, the mother argues the father failed to show any change in her "outlook" on their child's education and best interests. We disagree. There is ample evidence that the mother's outlook and approach to her son's education since the last court order have adversely affected the child.

In making custody decisions "the totality of the circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed." *Wheeler v. Gill*, 307 S.C. 94, 99, 413 S.E. (2d) 860, 863 (Ct. App. 1992); *See Davenport v. Davenport*, 265 S.C. 524, 527, 220 S.E. (2d) 228, 230 (1975). The education and parenting skills of a parent are legitimate factors to consider in making this determination. *See Davenport, supra.* In all child custody controversies, however, the controlling consideration is what is in the best interest of the child. *McCoy v. McCoy*, 283 S.C. 383, 323 S.E. (2d) 517 (1984).

The education of a child is something that affects his best interest. In fact, in todays society education is often the determinative factor between success and failure. The mother's refusal to allow the school to further test the child after his

---

[3] We are unaware of a case in South Carolina that outlines the criteria for determining a change in "primary placement" from one parent to another. We hold, however, that the usual factors family courts consider in determining the best interest of children are appropriate considerations. *See* R. Stuckey & G. Smith, *Marital Litigation in South Carolina* (Columbia, S.C.; S.C. Bar-C.L.E. Division, 1993).

achievement test scores indicated a need for further testing illustrates her inability to recognize the gravity and far-reaching impact of educational choices. Furthermore, the evidence indicates the mother has interfered with the child's education, by personally doing and/or correcting the child's homework. His tutor was very surprised by the child's low grades, because his homework was always very good. The child's teacher agreed that his homework was always very good, but his classroom work was on a much lower level. Since living with the father, however, the child's classroom performance has "matched" his homework.

Thus, the mother's "outlook" on education has, we hold, detrimentally affected the welfare and best interests of the child. The educational deterioration with the mother, as opposed to the subsequent progress when placed with the father, are such significant changes of circumstances as to justify the modification of the previous custody arrangement. *See Gilbert v. Gilbert,* 270 S.C. 202, 241 S.E. (2d) 559 (1978) (child's severe learning disability subsequent to original custody award combined with existence of superior educational facilities in area where father maintained home constituted sufficient change of circumstances to justify modification of previous custody arrangement); *See Peay v. Peay,* 260 S.C. 108, 112, 194 S.E. (2d) 392, 394 (1973) ("Notwithstanding our rule that custody will not be changed without a showing of a change of conditions, to which rule we adhere, the lower court may upon application determine if the best interest of the child is being served.").

The mother next argues the child's performance in school while in the father's *pendente lite* placement should not be considered, because the "change of circumstances" issue should be confined to changes occurring while the child was in her custody. We find this argument to be manifestly without merit. The child's school performance while in the father's custody is highly relevant to the issue of the child's best interest, the paramount issue in this case. We refuse to ignore this evidence, particularly where nothing indicates the mother sought an order of supersedeas concerning the grant of *pendente lite* placement with the father.

The mother also argues the trial judge erred in relying on the child's improved performance while in the father's cus-

tody, because this improvement tracks the child's past performance in school, i.e., he typically does poorly at first but improves by the end of the year. Our review of the record finds no support for this argument. The child's improvement while in the father's custody was far more dramatic than any improvement while in the mother's custody. Moreover, the record demonstrates a steady decline in the child's grades while in the mother's custody.

We also disagree with the mother's argument that change in placement was not necessary because the father could continue to assist the child even though placed with her, since they live in the same town. First, the father testified that the mother had interfered with these attempts in the past. Although the mother disputed this testimony, we leave the resolution of this credibility issue to the trial judge, particularly in light of his amply supported finding that the parties do not communicate well. Second, and more importantly, it is obvious that under the appealed order the father has far greater access to the child and much greater opportunity to assist the child with his education than under the prior court order. The record demonstrates that the father has made full use of this access and opportunity during the time the child was with him, and it has greatly benefitted the child.

The mother requests a remand so that the *guardian ad litem* (GAL) may complete his investigation. Prior to the hearing, the GAL had not interviewed anyone except the father. Based on the evidence presented at the hearing, however, which included the testimony of the father, the mother, the child's tutor while in the mother's placement, the child's teacher from the fourth grade and the first nine-weeks of the fifth grade, and the child's present fifth grade teacher, the GAL recommended that the child be placed with the father. We see no need for a remand under these circumstances, particularly where the GAL does not seek a remand and the mother does not suggest what further evidence could be developed by the GAL upon remand.

Finally, the mother contends that allowing a change in primary placement based on the child's school grades will invite a "floodgate" of litigation after issuance of every report card. We would be inclined to agree if grades were the only issue in this case, but they are not the only issue, or even the most im-

portant one. The important issue in this case is the mother's inability or unwillingness to appreciate the child's difficulties at school and the increasingly adverse affects of this unwillingness or inability on the child.[4]

We acknowledge that the present case is a close one between two loving and fit parents. The paramount consideration, however, is the best interest of the child. Under our view of the evidence, we agree the child's interests are best served by changing primary placement to the father.

Affirmed.

HOWELL, C.J., and SHAW, J., concur.

[4] Low grades cannot be considered in a vacuum. They often lead to social problems and low self-esteem.