24296

Donald L. PARRIS, Respondent v. Ruth H. PARRIS, Appellant.
(460 S.E. (2d) 571)

Supreme Court

*J. Lee Murphy,* Hilton Head Island, *for appellant.*

*Peter L. Fuge* of *Harvey and Battey,* Beaufort, *for respondent.*

*Amicus Curiae: M. Malissa Burnette,* of *Gergel, Burnette, Nickles and Grant,* Columbia, *for NOW Legal Defense Educ. Fund, the League of Women Voters of S.C., S.C. NOW* and the *University of South Carolina's Professional Women on Campus.*

Heard Dec. 9, 1994.

Decided Aug. 7, 1995.

WALLER, Justice:

Appellant, Ruth Parris (Mother), appeals an order of the Family Court awarding custody of the parties' minor son, Maxfield Parris, to Respondent, Donald Parris (Father). We affirm.

## FACTS

The parties were married in February, 1979. Maxfield was born on December 29, 1980. They lived on Hilton Head where Mother, over the years, became one of Hilton Head's leading realtors. Father worked on various real estate projects and commercial ventures but, in recent years, was less financially successful than Mother. In 1990, due primarily to the parties' financial problems, Mother told Father she wanted a divorce. Father moved out of the marital residence and instituted this action seeking custody of their son. Mother answered and sought full custody. After a hearing, Mother was granted temporary custody.[1] A final order was issued on December 30, 1991 granting Father permanent custody. Mother appeals.

## ISSUES

1. Does the Family Court's award of custody to Father reflect a gender bias against working women?
2. Should the Family Court have awarded joint custody?

## I. CUSTODY

Mother contends the award of custody to Father reflects a gender bias against working women and a predisposition on the part of the Family Court to award custody to Father due to her full-time career. Mother's characterization is not borne out by the record.

The evidence reflects that both parties were found to be fit custodial parents by the Guardian ad Litem (GAL) and the court-appointed psychologist. However, the record reveals that, prior to institution of these proceedings, Father exhibited a more active role in the day-to-day activities of the child. Although Mother assumed some of the

---

[1]The court specifically ruled, however, that the temporary custody award was of no precedential value.

parental responsibilities, Father was more actively involved in Maxfield's daily life, taking him, or carpooling, to doctors, baseball, swimming, soccer, parent/teacher conferences, signing report cards, doing yard work together, birthday parties, getting both children[2] up in the morning and off to school, making breakfast on weekends, cooking the family's Sunday dinner, etc. The Guardian ad Litem appropriately described the circumstances of this case, stating:

> This has been an extremely close call the whole way and both parties, I believe, are more than adequate care providers in both the intellectual stimulation and the mechanical care. But in the past, the history has shown that Ruth was not the person who provided it and Don was.[3]

The best interests of the child are paramount in custody disputes. The Family Court should consider "the character, fitness, attitude and inclinations on the part of each parent" as they impact on the child. *Epperly v. Epperly,* 312 S.C. 411, 413, 440 S.E. (2d) 884, 886 (1994). In making custody decisions the totality of the circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed. *Glanton v. Glanton,* 314 S.C. 58, 443 S.E. (2d) 810 (App. 1994). The trial judge, who observes the

---

[2] Mother had another child, Sharone, from a previous marriage.

[3] Similarly, the pediatrician who had treated Maxfield for ten years and was a very close friend of the family testified that Father would be the better custodial parent, stating:

I really felt that, in the best interest of Max or for Max's best interest, that I really felt that [Father] was a better—not that Ruth wasn't a good parent or Don was a, you know—it was that I thought he was a better custodial parent and that that's what this was about. . . .

It's—you know, with Max, Don is, you know, he's kind, and he's patient, and he instructs, and "good job," you know. You know, it's very interested, and they're really in tune. It's like a—it's a good match. Ruth tries very hard, but it's like it's not really there; does not always hear what—not always hear what her son has to say or, you know, may hear the words but not really hear in his heart, and there's just a difference, and there's a difference in the way that both parents treat the children, you know, as far as I can see; it's just a different feel to it. And Ruth can be very erratic and she can—you know, I guess we all can be, but you know, varying times I've seen her get a little bit, you know, crazy or high strung or whatever but not always—does not always do things logically or, you know, sometimes has that emotional response and doesn't always hear what the child is really saying.

witnesses and is in a better position to judge their demeanor and veracity, is given broad discretion in determining custody. *McAlister v. Patterson,* 278 S.C. 481, 299 S.E. (2d) 322 (1982). This Court, however, has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Epperly, supra.*

The record before this Court reflects, not a gender bias against Mother or the fact that she is a career-oriented woman but, rather, a case in which, as between two parents who are fit to be the custodial parent, the best interests of the child will be served by awarding custody of the child to Father. The preponderance of the evidence clearly supports the Family Court's ruling and, accordingly, we affirm the award of custody to Father.

We are nonetheless constrained to comment upon Mother's assertion that certain language in the Family Court's order reflects a gender bias against women. Specifically, Mother contends language characterizing her as a "very determined, easily angered career woman" who is "perceived in the business community as an aggressive competitive individual" demonstrates the Family Court's bias against awarding custody to working mothers. We disagree. The adjectives describing Mother's work ethic are gender neutral and would apply equally to a male parent.

We agree with Mother that the fact she is "aggressive" and "career oriented" is not, standing alone, relevant to a determination of custody. However, when considered in the context of the amount of time Mother spent with Maxfield on a daily basis, her work habits are highly relevant. Although not the sole factor, the amount of time a parent spends with the child has traditionally been a relevant consideration in determining which of two fit parents receives custody. Work habits necessarily impact upon this consideration. Where, as here, the record reveals a pattern of one parent as primary caretaker and the other parent as the primary wage earner, it would be incomprehensible for a court to disregard this fact in awarding custody. We decline to eliminate this factor from the Family Court's consideration.

Although we find the consideration here relevant, the terminology used could, as Mother's argument suggests, be taken out of context. Accordingly, in the future, we caution the Fam-

ily Courts to use the utmost circumspection in phrasing orders to ensure that the language is not susceptible of connotations such as those imputed by Mother here.

## 2. JOINT CUSTODY

Mother also urges this Court to reconsider our long-standing prohibition against joint custody.[4]

Neither of the parties sought or requested joint custody but, rather, each party sought to be Maxfield's primary custodian. Moreover, Mother never moved to alter or amend the judgment and the trial court, therefore, was not given an opportunity to address the issue of joint custody. Accordingly, the issue is unpreserved for review. *Washington v. Washington*, 308 S.C. 549, 419 S.E. (2d) 779 (1992); *Mobley v. Mobley*, 309 S.C. 134, 420 S.E. (2d) 506 (Ct. App. 1992). *Smith v. Smith*, 264 S.C. 624, 216 S.E. (2d) 541 (1975).

Accordingly, we need not decide in the present case whether to reconsider our position on joint custody.

The remainder of Mother's issues are without merit and are affirmed pursuant to Rule 220(b)(1), SCACR. The judgment below is

Affirmed.

CHANDLER, C.J., FINNEY and TOAL, JJ., and CURTIS G. SHAW, Acting Associate Justice, concur.

---

[4]This Court has repeatedly held that joint custody is to be avoided if at all possible and will be approved only under exceptional circumstances. *Avin v. Avin*, 272 S.C. 514, 252 S.E. (2d) 888 (1979); *Sharpe v. Sharpe*, 256 S.C. 517, 183 S.E. (2d) 325 (1971); *Mixson v. Mixson*, 253 S.C. 436, 171 S.E. (2d) 581 (1969); *see also Courie v. Courie*, 288 S.C. 163, 341 S.E. (2d) 646 (Ct. App. 1986).