730 S.E.2d 879

Katie Green BUIST, Respondent,

v.

Michael Scott BUIST, Appellant.

No. 4982.

Court of Appeals of South Carolina.

Heard Jan. 25, 2012.

Decided June 6, 2012.

Rehearing Denied Aug. 23, 2012.

Scarlet Bell Moore, of Greenville, for Appellant.

C. Rauch Wise, of Greenwood, for Respondent.

WILLIAMS, J.

On appeal, Michael Buist (Husband) contests the family court's division of marital assets, arguing the family court failed to properly assess the fair market value of the marital property. In addition, Husband appeals the family court's decision to grant primary placement of the parties' minor child with Katie Buist (Wife). Moreover, Husband challenges the family court's determination of the visitation schedule and child support payments. Finally, Husband alleges the family court erred in failing to make the necessary findings of fact in awarding attorney's fees to Wife. We affirm in part, reverse in part, and remand in part.

## FACTS/PROCEDURAL HISTORY

Husband and Wife were married on April 10, 1999, and are the parents of one minor child, R.B., who was born on September 2, 1999. After marital difficulty, the parties separated in December 2007. The same month, Wife filed a complaint seeking, among other things, custody of the parties' child, child support, equitable division of the marital property, alimony, and attorney's fees and costs. Husband answered and counterclaimed, seeking custody of the parties' child, child support to be held in abeyance, title and possession of the marital home, and equitable division of the marital property.

After Husband and Wife amended their pleadings, the parties appeared before the family court on multiple occasions prior to the final hearing in this matter. On December 28, 2007, the parties entered into a temporary consent order, agreeing to joint custody of R.B. with primary placement of R.B. to be with Wife. The order also provided for reasonable and liberal visitation privileges to Husband. In addition, the temporary consent order provided that Husband continue to pay R.B.'s monthly school tuition directly to Wife and allowed Wife to retain possession of the marital home. Several months later, the parties returned to court and modified the temporary consent order to require Husband to pay the mortgage on the marital home, while being reimbursed for a portion of the mortgage by the Wife. In addition, the temporary consent order mutually prohibited the parties from "disposing, selling, transferring, destroying, or giving away any property of the marriage without the written consent of the other or by further Order" of the family court.

In June 2008, Husband and Wife returned yet again to family court. At this hearing, the parties agreed to grant visitation to Husband consistent with the standard visitation schedule. In its second temporary consent order, the family court appointed a guardian ad litem, imposed a mutual restraining order on the parties, and required the parties to attend family counseling. Wife subsequently moved for a rule to show cause after Husband encumbered marital assets and entered the marital home without Wife's permission and in violation of the restraining order. The family court found Husband in contempt for entering the marital home without

Wife's consent and ordered him to pay Wife's attorney's fees for the hearing.

On November 25, 2008, Husband and Wife entered into a final consent order to address several financial matters. The parties agreed Husband would take possession of the marital home and pay Wife $31,500 for her share of the equity in the parties' home. The parties also agreed to the distribution of certain personal property, determined the Husband's IRA was marital property, and agreed Wife would be responsible for one-half of the balance for her plastic surgery. Additionally, in an order dated September 25, 2009, the family court granted the parties a divorce for "living separate and apart without cohabitation for a period of one year" pursuant to section 20–3–10(5) of the South Carolina Code (1976).

At the final hearing on November 5, 2009, the family court received testimony from the parties, their witnesses, and the guardian ad litem. After carefully weighing the evidence, the family court found "both parents love the minor child," but it concluded "the best interest of the child would be served for the current joint custodial situation to continue with primary placement being with [Wife], with liberal visitation to [Husband]." The family court also received into evidence financial documents pertaining to the parties' income and some evidence regarding the assets and debts of the marital estate, including Husband's business, Landscape Supply. In its decision to divide the marital estate, the family court awarded both real and personal property to each party; however, the family court did not properly value all of the assets and debts it awarded. In addition, the family court awarded Wife attorney's fees and costs.

On December 11, 2009, Husband timely filed a Rule 59(e), SCRCP, motion seeking to alter or amend the final order. The family court subsequently denied Husband's motion. This appeal followed.

## STANDARD OF REVIEW

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 651–52 (2011). Although this

court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651–52. The burden is upon the appellant to convince this court that the family court erred in its findings. *Id.*

## LAW/ANALYSIS

### I. Equitable Division

Husband asserts the family court improperly assessed the fair market value of the assets and debts of the parties and erred in dividing the property. Specifically, Husband contests (1) the valuation of the Highway 25 property; (2) the failure to include Landscape Supply as a marital debt; and (3) the failure to assign a specific value to all of the assets and debts of the marriage. We agree.

Section 20–3–620(B) of the South Carolina Code (Supp.2011) provides that the family court must consider fifteen factors in apportioning the marital estate and give each factor its proper weight.[1] These criteria are intended to guide

---

1. Section 20–3–620(B) lists the following fifteen factors the family court must consider: (1) the duration of the marriage along with the ages of the parties at the time of the marriage and at the time of the divorce; (2) marital misconduct or fault of either or both parties, if the misconduct affects or has affected the economic circumstances of the parties or contributed to the breakup of the marriage; (3) the value of the marital property and the contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; (4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets; (5) the health, both physical and emotional, of each spouse; (6) either spouse's need for additional training or education in order to achieve that spouse's income potential; (7) the nonmarital property of each spouse; (8) the existence or nonexistence of vested retirement benefits for either spouse; (9) whether separate maintenance or alimony has been awarded; (10) the desirability of awarding the family home as part of equitable distribution or the right to live in it for reasonable periods to the spouse having custody of any children; (11) the tax consequences to either party as a result of equitable apportionment; (12) the existence and extent of any prior support obligations; (13) liens and any other encumbrances on the marital property and any other existing debts;

the family court in exercising its discretion over apportionment of marital property. *Johnson v. Johnson*, 296 S.C. 289, 297, 372 S.E.2d 107, 112 (Ct.App.1988). Utilizing these fifteen factors, the family court must: (1) identify the marital property to be divided between the parties; (2) determine the fair market value of the property; (3) apportion the marital estate according to the contributions, both direct and indirect, of each party to the acquisition of the property during the marriage, their respective assets and incomes, and any special equities they may have in marital assets; and (4) provide for an equitable division of the marital estate, including the manner in which the distribution is to take place. *Gardner v. Gardner*, 368 S.C. 134, 136, 628 S.E.2d 37, 38 (2006).

■ Here, the family court failed to make the appropriate findings in apportioning the marital estate. The family court did not identify all the parties' marital property, but instead selectively divided certain real and personal property without determining the fair market value of all the property. In particular, the family court did not determine the fair market value of Landscape Supply, which constituted a considerable debt of the marriage. Moreover, the family court failed to determine the direct and indirect contributions of the parties to the acquisition of the marital property. It is unclear from our review of the record the value of the marital estate or the fairness of the overall apportionment. Additionally, counsel for both Husband and Wife conceded during oral argument that the family court never placed a value on Landscape Supply or the entire marital estate.

We, therefore, reverse the family court's division of the parties' marital property and remand the issue. In determining the property division, the family court shall identify all marital property and the contributions of each party consistent with the findings in this opinion. *See* § 20–3–620(B); *see also Hardy v. Hardy*, 311 S.C. 433, 436, 429 S.E.2d 811, 813 (Ct.App.1993) (holding section 20–3–620(B)(13) creates a rebuttable presumption that a debt of either spouse incurred prior to marital litigation is marital debt and must be factored

---

(14) child custody arrangements and obligations at the time of the entry of the order; and (15) any other relevant factors that the family court expressly enumerates in its order.

in the totality of equitable apportionment); *Rowland v. Rowland,* 295 S.C. 131, 132–133, 367 S.E.2d 434, 435 (Ct.App.1988) (remanding the issue of equitable distribution when the family court failed to make findings on the parties' contributions and on other factors).

## II. Best Interests of R.B.

Husband contends the family court abused its discretion in granting primary placement of R.B. with Wife. In addition, Husband asserts the family court erred in modifying the visitation schedule and the method of making child support payments.

### a. Primary Placement

Husband argues the family court abused its discretion in awarding primary placement of R.B. to Wife. We disagree.

In a child custody case, the welfare of the child and what is in the child's best interest are the primary, paramount, and controlling considerations of the family court. *Davis v. Davis,* 356 S.C. 132, 135, 588 S.E.2d 102, 103–04 (2003). In determining the best interest of the child, the family court considers several factors, including: "who has been the primary caretaker; the conduct, attributes, and fitness of the parents; the opinions of third parties (including GAL, expert witnesses, and the children); and the age, health, and sex of the children." *Patel v. Patel,* 347 S.C. 281, 285, 555 S.E.2d 386, 388 (2001). In other words, "the totality of the circumstances *peculiar to each case* constitutes the only scale upon which the ultimate decision can be weighed." *Parris v. Parris,* 319 S.C. 308, 310, 460 S.E.2d 571, 572 (1995) (emphasis added).

Husband contends the best interests of the child would be served by granting him primary placement of R.B. In support of this contention, Husband asserts that while Wife had primary placement of the child, R.B. did not have his own room to sleep in and often witnessed fights between Wife's brother and Wife's father. In addition, Husband testified that when R.B. was picked up for Boy Scouts, he often lacked shoes, socks, and underwear. Moreover, Husband presented evidence of unsanitary conditions in the marital home when

Wife and R.B. lived there as an additional reason why the best interests of the child would be served by granting primary placement of R.B. with Husband.

The family court properly considered this evidence and other testimony on the strengths and weaknesses of each parent and weighed the totality of circumstances in determining the child's best interests would be served by awarding custody to Wife. After hearing extensive testimony on the custody issue from the parties and several character witnesses, and after reviewing the guardian ad litem's report, the family court made in-depth findings to support its decision to award primary placement of the child to Wife. We find ample support in the record for these findings.

Initially, the family court found Wife has been the primary caretaker of R.B. and continued to do so since the parties separated and agreed to have joint custody of R.B. The family court also considered the spiritual aspect of the child's life in noting Wife has "carried the minor child to church and church activities since he was very young." Additionally, the family court noted that although Wife lives with her parents, R.B. has a very close relationship with the maternal grandparents and he has excellent living accommodations, including a separate bedroom.

In addition, the child's education is a proper factor for consideration in determining custody. *See Glanton v. Glanton,* 314 S.C. 58, 60, 443 S.E.2d 810, 812 (Ct.App.1994) ("The education of a child is something that affects his best interest."). The family court entertained testimony from Wife, R.B.'s tutor, and Husband's mother, who all recounted Wife's efforts to improve R.B.'s education. Based upon this testimony, the family court concluded R.B.'s learning disability required him to repeat the first grade. The family court further found Wife fully recognizes the scope of R.B.'s learning disability and took the affirmative step to employ a tutor to help R.B. Moreover, the family court found Wife "aided the tutor and has participated with the remedial procedures for the child's improvement" and noted R.B.'s "current grades are exceptional for the Fall Semester of 2009." Wife's approach to the child's education, coupled with the child's improved performance while in Wife's primary care, supports the family

court's award of primary placement to Wife. *Glanton*, 314 S.C. at 60, 443 S.E.2d at 812.

The family court's findings show it properly considered the fitness of each parent and the relevant factors that would affect R.B.'s best interests in making its custody and placement determination. *See Pirayesh v. Pirayesh*, 359 S.C. 284, 296, 596 S.E.2d 505, 512 (Ct.App.2004) ("When determining to whom custody shall be awarded, the court should consider all the circumstances of the particular case and all relevant factors must be taken into consideration."). Accordingly, the family court did not err in awarding primary placement of R.B. with Wife.

### b. Visitation Schedule

Next, Husband asserts the family court erred in failing to adopt the visitation schedule set forth in the temporary order.[2] We disagree.

As an initial matter, we note Husband abandoned this issue on appeal. In Husband's brief, he fails to cite any supporting authority for his position, and all arguments are merely conclusory statements. *See Wright v. Craft*, 372 S.C. 1, 20, 640 S.E.2d 486, 497 (Ct.App.2006) (finding an issue listed in the statement of issues on appeal but not addressed in the brief is abandoned); *Ellie, Inc. v. Miccichi*, 358 S.C. 78, 99, 594 S.E.2d 485, 496 (Ct.App.2004) (holding when an issue is not argued within the body of the brief but is only a short, conclusory statement, it is abandoned on appeal). We address this issue, however, because "procedural rules are subservient to the court's duty to zealously guard the rights of minors."

---

**2.** Husband asserts the family court modified the visitation times in the final order contrary to the visitation schedule set forth in the temporary order without his consent. We take this opportunity to reiterate that temporary hearings are not de facto final hearings, and we adhere to the principle that temporary orders must be without prejudice to the rights of the parties at the final hearing. *See Rimer v. Rimer*, 361 S.C. 521, 527 n. 6, 605 S.E.2d 572, 575 n. 6 (Ct.App.2004). As this court aptly stated in *Rimer*, "To assign weight to the amount of support awarded pendente lite or view the award as having any precedential value at the merits hearing or on appeal would discourage parties from amicably agreeing upon temporary support for fear the slightest concession would prejudice their position at the final hearing." *Id.*

*Joiner ex rel. Rivas v. Rivas,* 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000).

As with child custody, the welfare and best interests of the child are the primary considerations in determining visitation. *Woodall v. Woodall,* 322 S.C. 7, 12, 471 S.E.2d 154, 158 (1996). Similarly, visitation is addressed to the broad discretion of the family court and its decision will not be disturbed on appeal absent abuse. *Paparella v. Paparella,* 340 S.C. 186, 191, 531 S.E.2d 297, 300 (Ct.App.2000).

At the merits hearing, Husband wanted the same visitation schedule as set forth in the temporary consent order. Wife requested three changes to the visitation schedule in the temporary consent order at the final hearing, arguing the changes were in the best interests of the child. Wife asked the family court to alter the weekend visitation dates so R.B. could play with a cousin similar in age who has visitation with Wife's brother on those particular weekends. In addition, Wife asked the family court to order the Monday evening visitation to conclude at 8 p.m. because 9 p.m. is R.B.'s usual bedtime and R.B. was getting home too late. Finally, Wife requested the family court order the Christmas visitation schedule to allow R.B. to participate in her family's Christmas activities. The family court agreed with Wife and concluded the welfare and best interests of R.B. were served in ordering the changes. In doing so, the family court ordered the following visitation schedule:

(1) Husband shall have three non-consecutive weeks of visitation in the summer with the weeks running from Sunday at 6pm until Sunday at 6pm and the first week shall be the third week of June, the second week being the first week of July and the third week being the first week of August.

(2) Husband shall have Thanksgiving visitation starting when the child gets out of school and going to Sunday at 6pm on even years and the Mother having odd years.

(3) Husband shall always get visitation for the weekend when Father's Day occurs and Wife shall get visitation for the weekend when Mother's Day occurs.

(4) Weekend visitation will be switched with Husband having two (2) consecutive weeks to allow for this change.

(5) Husband shall have weekly visitation every Monday evening from 5:00 p.m.–8:00 p.m. for boy scouts or on any weekday evening that the boy scouts meet and any other times the parties agree.

(6) Husband will have the child from the beginning of Christmas vacation until 10:30 a.m. on Christmas morning. Wife will have the child from 10:30 a.m. Christmas morning until school resumes.

It is clear from our review of the record that Wife's requests were for the benefit of R.B. and the family court considered the welfare and best interests of the child in determining visitation. *See Woodall,* 322 S.C. at 12, 471 S.E.2d at 158 (holding the welfare and best interests of the child are the primary considerations in determining visitation). Moreover, we conclude that Husband has failed to establish that the family court abused its discretion. *Paparella,* 340 S.C. at 191, 531 S.E.2d at 300. Accordingly, the family court did not err in entering an appropriate visitation schedule at the final hearing on the merits.

### c. Child Support Payments

Husband also contends the family court erred in determining he is required to make child support payments through the clerk of court. We agree.

In the instant case, the family court made the following pertinent finding of fact:

I find that the respective incomes of the parties remains virtually the same as when child support was ordered in the Temporary Order and shall continue to be paid in the amount of Four Hundred Thirty–Three and 00/100 ($433.00) Dollars per month, together with costs, *to the Clerk of Court for Abbeville County.*

(emphasis added). However, this finding of fact is inconsistent with the family court's conclusion of law that Husband's child support payments "will continue to be paid in the amount *and method* he currently pays." (emphasis added). The testimony presented at trial by both Husband and Wife established Husband consistently made his payments directly to Wife. Regardless of the contradictory nature of the family court's order with regard to the child support payments, Wife states

in her brief she has no objection to Husband directly depositing the payment into her account. Accordingly, Husband is required to make child support payments in the same amount as previously ordered by the family court, but he is permitted to directly deposit the payment into Wife's banking account, thereby avoiding any additional costs assessed by the Clerk of Court for Abbeville County.

### III. Attorney's Fees

Last, Husband argues the family court abused its discretion in awarding $8,000 in attorney's fees to Wife. Specifically, Husband argues the family court did not make the necessary findings of fact regarding each of the *Glasscock*[3] factors. We find this issue is not preserved for our review.

"An issue may not be raised for the first time on appeal. In order to preserve an issue for appeal, it must be raised to and ruled upon by the [family] court." *In re Michael H.*, 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004). At trial, counsel for Wife and Husband both submitted affidavits for attorney's fees incurred in the representation of their respective clients during the course of litigation. Husband did not challenge Wife's fee affidavit at the hearing and, therefore, failed to procure a ruling from the family court on this issue. *See Buckner v. Preferred Mut. Ins. Co.*, 255 S.C. 159, 161, 177 S.E.2d 544, 544 (1970) (holding an unchallenged ruling, right or wrong, is the law of the case and requires affirmance); *Smith v. Smith*, 386 S.C. 251, 273, 687 S.E.2d 720, 732 (Ct.App.2009) (stating to preserve an issue for appellate review, it must be raised to and ruled upon by the court).

While Husband failed to challenge the attorney's fees affidavit presented by Wife's counsel at trial, he did raise a general argument in a subsequent Rule 59(e), SCRCP, motion stating, "the Court required [Husband] to pay large sums of money to [Wife], her attorney, and the guardian ad litem within 180 days when the record clearly establishes through

---

3. *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991), sets forth the following factors to be considered in determining the amount of attorney's fees to be awarded: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) counsel's professional standing; (4) the contingency of compensation; (5) the beneficial results obtained; and (6) the customary legal fees for similar services.

expert testimony that [Husband] does not have the ability to borrow any money or to pay those sums within that time frame." Although Husband objects to what he contends is an unreasonable period of time to pay, his argument is not based on a specific challenge to an award of attorney's fees. Further, any request at the 59(e) stage of the proceedings was untimely because Husband could have raised this issue at trial. *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007) ("[A]n issue may not be raised for the first time in a post-trial motion."). Accordingly, we find this issue is not preserved for our review.

## CONCLUSION

In summary, we find the family court erred in dividing the marital estate and reverse and remand for further proceedings consistent with this opinion. However, we affirm the family court's decision with regard to primary placement of the minor child and the visitation schedule. In addition, the family court's ruling as to the method of child support payments is reversed. Because Husband failed to properly preserve the issue of attorney's fees, we affirm the family court's ruling on this issue. Accordingly, the family court's order is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART.**

SHORT and GEATHERS, JJ., concur.