**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Stephen Roy Franklin II, Respondent,

v.

Kelly Simpson Franklin, Appellant.

Appellate Case No. 2019-000201

---

Appeal From York County
Thomas Henry White, IV, Family Court Judge

---

Unpublished Opinion No. 2022-UP-321
Heard December 8, 2021 – Filed August 3, 2022

---

**AFFIRMED IN PART, REVERSED IN PART**

---

Thomas Franklin McDow, IV, of McDow and Urquhart, LLC, and Barrett Wesley Martin, of Barrett W. Martin, P.A., both of Rock Hill, for Appellant.

Thomas M. Neal, III, of Law Offices of Thomas M. Neal, III, of Columbia, and Pamela Michele Pearson, of Rock Hill, both for Respondent.

---

**PER CURIAM:** Kelly Simpson Franklin (Mother) appeals the family court's final order, arguing the family court erred in: (1) failing to make findings of fact regarding witness credibility, (2) calculating Stephen Franklin's (Father) income

for purposes of its child support determination, (3) not reducing Father's visitation based on his failure to exercise it, and (4) not awarding Mother attorney's fees. We modify Father's parenting time, award Mother $12,000 in attorney's fees, and affirm the family court's order in all other respects.[1]

Father and Mother were married in 2008; two children were born of the marriage.[2] The parties separated in 2016, and Mother subsequently filed an action seeking, inter alia, a divorce, child custody and support, spousal support, and equitable apportionment. Following mediation, the parties executed a partial settlement agreement, which the family court approved on January 25, 2017.

On March 30, 2017, Father filed an action seeking a divorce, incorporation of the prior order, modification of child support, and attorney's fees. He then filed a motion for temporary relief and an action seeking modification of child support, visitation, and attorney's fees. Mother timely answered and likewise requested a divorce and modification of visitation. Following a June 1, 2017 hearing, the family court granted the parties a divorce.

On June 8, 2017, Mother filed a return to Father's motion for temporary relief, in which she admitted a modification of child support was warranted. The next day, she filed an action for contempt, alleging Father violated the order of separate support and maintenance.

On July 13, 2017, the family court issued the decree of divorce and consolidated the remaining claims, including those for modification of child support and visitation. In a temporary order, the family court modified Father's child support obligation to $2,133 per month and changed Father's midweek parenting time from alternating Thursdays to alternating Wednesdays. On January 2, 2018, Father filed a motion to recalculate his child support obligation.

---

[1] The family court used the terms "parenting time," "custody schedule," and "visitation" interchangeably in describing the parties' joint custody arrangement. The parties had agreed to "joint custody." Mother received primary custody, and Father received secondary custody. For consistency, we refer to the time the children spent with a parent as "parenting time."

[2] At the time of trial, the children were three and five years old.

On October 15, 2018, the family court began the trial of the consolidated issues. By order dated December 18, 2018, the family court found Mother failed to demonstrate a basis for amending the parenting schedule. The family court modified Father's child support obligation for six time periods, retroactive to April 11, 2017, based on which parent had paid the children's health insurance and childcare costs during those periods. The family court calculated Father's child support obligation during the specified time to range from $1,879 to $2,907. Father's current child support obligation was calculated to be $2,021. Mother appealed.

**Standard of Review**

On appeal from the family court, the appellate court reviews factual and legal issues de novo. *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam). Thus, the appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Lewis v. Lewis*, 392 S.C. 381, 384, 392, 709 S.E.2d 650, 651, 655 (2011). However, this broad scope of review does not require the appellate court to disregard the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.* at 385, 392, 709 S.E.2d at 651–52, 655. Therefore, the appellant bears the burden of convincing the appellate court that the family court committed error or that the preponderance of the evidence is against the family court's findings. *Id*. at 392, 709 S.E.2d at 655.

**Law and Analysis**

**I. Witness Credibility**

Mother argues the family court erred by failing to make specific findings of fact addressing the credibility of the witnesses. We disagree.

"Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony." *Whitesell v. Whitesell*, 431 S.C. 575, 584, 848 S.E.2d 588, 592 (Ct. App. 2020). "The appellant has the burden of showing this court the greater weight of evidence is against the family court's findings." *Id.* "We know of no authority requiring the family court to give a witness-by-witness account of its credibility assessments. . . . [A]n order is sufficient as long as a

reviewing court can determine the basis for the family court's ruling." *Id.* at 584, 848 S.E.2d at 593.

In its final amended order, the family court stated:

> The Court considered the testimony of the parties and their witnesses and reviewed the exhibits, the court-requested post-trial memorandums and tax-related transcripts and the case file. The Court considered the credibility of the witnesses, the manner in which they testified, and all other factors to be considered in weighing credibility of witnesses.

However, the family court noted its concern about some of Father's testimony, specifically regarding his alleged payment of an IRS debt. The family court stated:

> Given the liberties taken by [Father] in taking questionable deductions and the unorthodox and cumbersome business expense reimbursement process adopted, and apparently followed, by his employer, it is no mystery to the Court that [Father's] return is "being reviewed"; however, the Court is concerned with the obvious discrepancy in [Father's] bold sworn testimony that he had paid "about $10,000 and maybe another $1,000" on the tax debt subject of this action, when in reality to date he had paid $985.56 just prior to trial of this matter.

Despite this clear reference to Father's credibility, Mother argues the family court's order "lacked any analysis of credibility." Our review of the record reveals the family court properly evaluated the credibility of the parties and considered the expert testimony presented by each side.

## II. Calculation of Father's Gross Monthly Income

Mother argues the family court erred in calculating Father's income for purposes of determining child support. She contends Father's monthly income should include deposits to all of his accounts, which totaled $200,872.17, and asserts Father's gross monthly income should have been calculated to be $22,319.13. We find no support in the record for Mother's argument.

"The guidelines define income as the actual gross income of the parent, if employed to full capacity, or potential income if unemployed or underemployed. Gross income is used in order to avoid contention over issues of deductibility which would otherwise arise if net income were used." S.C. Code Ann. Regs. 114-4720(A)(1) (Supp. 2021). "Gross income includes income from any source including salaries, wages, commissions, royalties, [and] bonuses . . . . Unreported case income should also be included *if it can be identified*." S.C. Code Ann. Regs. 114-4720(A)(2) (Supp. 2021) (emphasis added).

"For income from self-employment, proprietorship of a business, or ownership or a partnership or closely held corporation, gross income is defined as gross receipts minus ordinary and necessary expenses required for self-employment or business operation, including employer's share of FICA." S.C. Code Ann. Regs. 114-4720(A)(4) (Supp. 2021). "In general, the court should carefully review income and expenses from self-employment or operation of a business to determine actual levels of gross income available to the parent to satisfy a child support obligation. As may be apparent, this amount may differ from the determination of business income for tax purposes." *Id.* "[T]he court should count as income expense reimbursements or in-kind payments received by a parent from self-employment or operation of a business if they are significant and reduce personal living expenses, such as a company car, free housing, or reimbursed meals. . . ." S.C. Code Ann. Regs. 114-4720(A)(3) (Supp. 2021).

Father first began working with Argsoft Cloud Services (Argsoft) as a business development manager in January 2017, selling IT security software and maintaining accounts throughout the Southeast, the Midwest, and Bermuda. Pursuant to his employment agreement, his salary was $100,000 for the first twelve months, after which time it was subject to review. Father was eligible to earn commissions and bonuses. As an employee, Argsoft directly booked and paid for Father's hotel stays, flights, and car rentals, and it reimbursed him for food, incidentals, client entertainment, and trade shows.

In November 2017, Father's employment position changed, and he entered an Independent Contractor Agreement (the Agreement) with Argsoft. According to Father, Argsoft terminated five salespersons in the United States due to cash flow issues. Father explained he asked Argsoft about working as a contractor so if "they ever did have to get rid of another person, then they could get rid of me quickly." Under the Agreement, Father earned a monthly income of $8,840—forty hours per

week at his contracted fifty-one-dollar hourly rate. Father booked his own travel, and Argsoft reimbursed him for his expenses upon receiving copies of his receipts.

Father incurred large expenses as an independent contractor because his territory increased due to Arsoft's reduction of salespersons, resulting in Father maintaining larger accounts throughout Europe, the Caribbean, the United States, and Toronto. Father introduced three months' worth of receipts into evidence to demonstrate the types of work-related expenses he incurred. Father testified he was reimbursed for hotel stays, car rentals, meals, gifts for customers, and IT support equipment for customers. Wife has not provided any evidence that would directly dispute this, nor did she provide evidence that Father received commission or bonus checks. Notably, Mother's accounting expert testified she only assumed the deposits were income and admittedly did not review the reimbursement receipts Father provided.

Further, Mother's case at trial seemed to be focused on proving Father was an employee of Argsoft, rather than an independent contractor. Regardless of whether Father was an employee or independent contractor, Mother did not present evidence to support her position that any challenged deposits were not reimbursements for expenses, and we note Father also received reimbursement checks when he was classified as an Argsoft employee.

We acknowledge Reg. 114-4720(A)(3)(C) instructs the family court to consider expense reimbursements in determining gross income "if they are significant and reduce personal living expenses, such as a company car, free housing, or reimbursed meals. . . ." The record in this case shows Father's reimbursed expenses were often travel-related business expenses on international trips. And while some of the receipts Father provided reflected reimbursements for meals in Myrtle Beach or near Lake Murray, Mother has not demonstrated these were not client meals or business-related expenses.

Much of Mother's argument that Father's gross monthly income should include the reimbursed expenses is based on whether such expenses are tax deductible. Even though the record indicated Father took improper deductions on his taxes, child support is determined based on gross income, not deductibility. *See* S.C. Code Ann. Regs. 114-4720(A)(1) ("The guidelines define income as the actual gross income of the parent, if employed to full capacity, or potential income if unemployed or underemployed. Gross income is used in order to avoid contention over issues of deductibility which would otherwise arise if net income were used."). In any event, the family court specifically noted Father's credibility problem in referencing the "liberties" Father took with respect to his tax

deductions, Father's "bold"—and impliedly, false—testimony about payments on the tax debt, and the fact that it is "no mystery" to the family court that the IRS is reviewing his return. Accordingly, we find the family court properly evaluated Father's credibility problems, and we affirm the family court's determination of Father's gross income.

## III. Terms of Father's Contract

Mother argues the family court erred in allowing Father to introduce hearsay contradicting the terms of his contract with Argsoft. Mother also contends the admission of testimony addressing the terms of the contract violated the parol evidence rule. We find Mother was not prejudiced by any erroneous admission of such evidence as it was cumulative.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court of this State or by statute." Rule 802, SCRE.

During Father's testimony, the following discussion ensued:

> Q. All right. Mr. Franklin, is there a commission plan associated with your status as an independent contractor?
>
> A. No ma'am.
>
> Q. Was there a commission plan associated with your work with Arg Soft when you were an employee?
>
> A. Yes ma'am.
>
> . . . .
>
> Q. Okay. So why is there no commission plan associated with your status as an independent contractor?
>
> A. As an independent contractor, I'm not an employee of the company; they told me that a contractor—

Mother then objected based on hearsay. In overruling Mother's hearsay objection, the family court stated, "Well, I'm going to allow him to talk about his understanding of the contract, so to that extent, I overrule the objection." Thereafter, Father testified, "As an independent contractor, I was told that I would not be eligible for bonuses or commissions because I made more than most people do, from an hourly wage."

Father's testimony that he "was told" that as an independent contractor, he was ineligible for bonus or commissions was likely inadmissible hearsay. However, any error in allowing this testimony was harmless because Father's expert, Bernard Ackerman, determined Father was an independent contractor based on the Agreement, the method in which Father was paid, and the way Father kept track of his expenses. Ackerman acknowledged the Agreement stated Proud Distribution (Father's business) would participate in the commission plan, but he testified he did not see any commissions or bonuses paid in his review of Proud Distribution's accounts. Moreover, Ackerman specifically noted that "as an independent [interruption] contractor, he could be servicing several companies." *See Bojilov v. Bojilov*, 425 S.C. 161, 178, 819 S.E.2d 791, 800 (Ct. App. 2018) ("[T]o warrant reversal based on the erroneous admission or exclusion of evidence, the complaining party must show both error and resulting prejudice. When evidence is merely cumulative to other evidence, its admission is harmless and does not constitute reversible error." (citation omitted)).

Mother's parol evidence argument is not preserved for our review because before the family court, she objected to Father's testimony only on the basis of hearsay. *See Doe v. Doe*, 370 S.C. 206, 212, 634 S.E.2d 51, 54 (Ct. App. 2006) ("To preserve an issue for appellate review, the issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [family] court.")

## IV. Parenting Schedule

Mother argues the family court erred in failing to eliminate Father's alternating Wednesday evening parenting time and Sunday overnights during his parenting weekends. She further contends Father's Wednesday evenings and Sunday overnights should be eliminated if Father does not exercise this parenting time. Mother asserts the family court erred in analyzing this case as though she were asking for a change in custody, not visitation or parenting time. Pursuant to our de novo review, we find it is in the best interests of the children to modify the parenting schedule.

When the family court has previously established a parenting schedule, "the moving party must show a change of circumstances to warrant a change of visitation." *Ingold v. Ingold*, 304 S.C. 316, 320, 404 S.E.2d 35, 37 (Ct. App. 1991). "As with child custody, the welfare and best interests of the child are the primary considerations in determining visitation." *Buist v. Buist*, 399 S.C. 110, 122, 730 S.E.2d 879, 885 (Ct. App. 2012), *aff'd as modified on other grounds*, 410 S.C. 569, 766 S.E.2d 381 (2014).

In its final order, the family court noted the marital settlement agreement contained a "custody schedule," and the family court approved the schedule in its January 25, 2017 order. The schedule included the alternating midweek parenting time and Sunday overnights Mother now seeks to eliminate. Mother challenges the family court's findings that she failed to demonstrate a substantial change in circumstances affecting the children's welfare or that changing the parenting schedule was in the children's best interests.

We agree with Mother that it is in the children's best interests to modify the parenting schedule. Mother testified that both she and the children need a consistent schedule for stability and planning purposes. We share Mother's concern regarding Father's inconsistent exercise of his midweek parenting time and his failure to provide sufficient notice of such to Mother. Therefore, we modify the parenting schedule to require that Father must notify Mother by 10:00 a.m. on the Monday during the week of his scheduled midweek parenting time if he intends to exercise the midweek parenting time. If Father does not notify Mother by 10:00 a.m. on Monday, then he will not be entitled to the midweek parenting time in that week.

Moreover, we find it is in the children's best interests to eliminate Father's overnight parenting time on Sundays during his weekends with the children. Both children are now attending elementary school. By staying overnight with Father in Chapin, the children would be required to wake up early on Monday mornings to travel to Fort Mill to attend school. This would be unduly burdensome for these young children. Returning to Mother by 6:00 p.m. on Sunday evenings would allow the children to maintain their normal routine prior to the start of the school week.

To reiterate, we modify the family court's parenting schedule as follows: (1) In weeks during which Father is entitled to midweek parenting time, he must notify Mother by 10:00 a.m. Monday if he intends to exercise this parenting time; otherwise, he shall not have midweek parenting time that week, and (2) Father's

overnight parenting time on Sunday nights during his weekends with the children is eliminated; Father must return the children to Mother by 6:00 p.m. on Sunday evenings on those weekends.

## V. Attorney's Fees

Mother argues she is entitled to an award of attorney's fees. She asserts the family court's findings address only the amount of attorney's fees, not whether to award them.

In determining whether to award attorney's fees, the family court considers "(1) the party's ability to pay his/her own attorney's fee; (2) [the] beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) [the] effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). "Failing to cooperate and prolonging litigation can serve as an additional ground for awarding attorney's fees." *Daily v. Daily*, 432 S.C. 608, 630, 854 S.E.2d 856, 868 (Ct. App. 2021). In determining the reasonableness of attorney's fees, the family court considers "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) [the] professional standing of counsel; (4) [the] contingency of compensation; (5) [the] beneficial results obtained; [and] (6) [the] customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991). "The family court can also consider a litigant's uncooperative and evasive behavior when determining the reasonableness of the fees." *Daily*, 432 S.C. at 630–31, 854 S.E.2d at 868.

Here, both Mother and Father are capable of paying their own fees. As the family court noted, Father has already liquidated many of his assets, but his income is significantly higher than Mother's. Mother earns a gross monthly income of $5,086.97. It appears Mother and Father are in relatively good financial condition. As to the income and child support calculations, Father's expert acknowledged, "The beneficial result here, I don't know that there is a beneficial result for these folks. The father asked for a modification; he didn't ask for a decrease. The mother didn't ask for an increase, from what I read in the pleadings, they just agreed to a modification, whatever it is."

Father earns significantly more than Mother, and it is likely that both parties' standards of living would be affected by having to pay the nearly $60,000 in

attorney's fees incurred in this action.[3]  Father testified his standard of living would be affected if he had to pay Mother's attorney's fees because he does not have much left to liquidate to pay them as he previously liquidated his retirement accounts during the process of the divorce.  However, Mother testified things were financially harder for her as she and the children were still living with her brother.

In light of the parties' standards of living, Father's greater ability to pay, and the beneficial results Mother has obtained with respect to the visitation modification, we find it appropriate for Father to pay $12,000 of Mother's attorney's fees, either by lump sum, or monthly at a rate of $1,000 per month until the full sum is satisfied.  We reach this result through our analysis of the *Glasscock* factors and our recognition that Father's evidence was at times inconsistent, likely increasing the complexity of this case and any financial determination involved.  The family court referenced Father's evasive testimony in addressing Father's tax situation, and we note our difficulty in tracking Father's independent contractor payments versus his reimbursements due to the various bank accounts in which he commingled funds.

**Conclusion**

Based on the foregoing, we modify the family court's parenting schedule, award Mother $12,000 in attorney's fees, and affirm the family court's order in all other respects.

**AFFIRMED IN PART, REVERSED IN PART.**

**WILLIAMS, C.J., MCDONALD, J., and LOCKEMY, A.J., concur.**

---

[3] Father had incurred $26,000 in attorney's fees and costs associated with the modification action, and Mother had incurred approximately $35,000.